THE STATE, EX REL. FOX ET AL., *v.* CUYAHOGA COUNTY HOSPITAL SYSTEM ET AL.

[Cite as State, ex rel. Fox, *v.* Cuyahoga Cty. Hosp. System (1988), 39 Ohio St. 3d 108.]

(No. 87-770—Submitted June 8, 1988—Decided October 12, 1988.)

*Phillips & Co., L.P.A.,* and *Gerald W. Phillips,* for relators.

*Calfee, Halter & Griswold, Mark I. Wallach* and *Joseph A. Castrodale,* for respondents.

MOYER, C.J. R.C. 149.43(C) provides that a person allegedly aggrieved by the failure of a governmental unit to promptly prepare a public record and to make it available for inspection or to make a copy of a public record available may commence a mandamus action. This section was enacted by the General Assembly to supersede this court's holding in *State, ex rel. Fostoria Daily Review Co.,* v. *Fostoria Hosp. Assn.* (1987), 32 Ohio St. 3d 327, 512 N.E. 2d 1176. It is clear from the language of R.C. 149.43(C) that relators can maintain this action and, indeed, respondents do not challenge relators' status to do so.

The primary issue presented is whether the Hospital System is a "public institution" and thus a "public office" that keeps public records subject to disclosure pursuant to R.C. 149.43. We hold that it is.

R.C. 149.43(A)(1) defines "public record" as "* * * any record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, except medical records, records pertaining to adoption, probation, and parole proceedings, records pertaining to actions under section 2151.85 of the

110

Revised Code and to appeals of actions arising under that section, records listed in division (A) of section 3107.42 of the Revised Code, trial preparation records, confidential law enforcement investigatory records, and records the release of which is prohibited by state or federal law."[1]

R.C. 149.011(A) defines "public office" as "any state agency, *public institution,* political subdivision, or any other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." (Emphasis added.)

In *Halaby* v. *Bd. of Directors of Univ. of Cincinnati* (1954), 162 Ohio St. 290, 298, 55 O.O. 171, 175, 123 N.E. 2d 3, 7, this court described the University of Cincinnati as a "* * * public institution organized for the purpose of *rendering a public service* to the residents of the city of Cincinnati. It is supported in part by public taxation and in this respect stands in the same category as the city's water service, garbage-collection service, fire-department service, and its public-school service. * * *" (Emphasis added.) "Public institution" is defined in Black's Law Dictionary (5 Ed. 1979) 719, as: "One which is created and exists by law or public authority, for benefit of [the] public in general; *e.g.,* a *public hospital,* charity, college, university, etc." (Emphasis added.)

Under *Halaby,* an entity organized for rendering service to the residents of its community and supported by public taxation is deemed a public institution. The Cuyahoga County Hospital System renders a public service to residents of Cuyahoga County and is supported by public taxation. As such,

it is a "public institution" and thus a "public office" pursuant to R.C. 149.011(A).

Respondents assert that the public records law, in R.C. 149.011(A), expressly mandates disclosure of records only by institutions engaged in the performance of governmental functions. Respondents contend that in Ohio a hospital owned and operated by a county is deemed, as a matter of law, to be performing a proprietary and not a governmental function and thus is not required to disclose its records. We disagree. Respondents' interpretation of R.C. 149.011(A) does not accord with the language of the statute. The clause reads "any function of government" and not "governmental functions" as respondents contend. A public office is any entity that exercises any function of government. The statute does not distinguish between proprietary and governmental functions. Assuming, *arguendo,* that there is any doubt as to the intent of the General Assembly, such doubt should be resolved in favor of disclosure of public records. *Wooster Republican Printing Co.* v. *Wooster* (1978), 56 Ohio St. 2d 126, 10 O.O. 3d 312, 383 N.E. 2d 124, paragraph two of the syllabus. The fact that the General Assembly included an exception for medical records in its definition of "public record," R.C. 149.43(A)(3), shows its intent to include public hospitals as public offices.

Respondents also advance several policy arguments in support of their position, chief of which is that disclosure of the hospital's records would undermine its ability to compete and would disrupt and interfere with the hospital's operation. This argument is not grounds for nondisclosure. This court has held in *State, ex rel. Beacon Journal Publishing Co.,* v. *Andrews* (1976), 48 Ohio St. 2d 283, 289, 2

---

[1] The records at issue herein do not appear to fall within the R.C. 149.43(A)(1) exceptions.

O.O. 3d 434, 437, 358 N.E. 2d 565, 569, that "[n]o pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the respondent to evade the public's right to inspect and obtain a copy of public records within a reasonable time. The respondent is under a statutory duty to organize his office and employ his staff in such a way that his office will be able to make these records available for inspection and to provide copies when requested within a reasonable time."

R.C. 149.43(B) states:

"All public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. Upon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time. In order to facilitate broader access to public records, governmental units shall maintain public records in such a manner that they can be made available for inspection in accordance with this division." Under R.C. 149.43(B), the respondents must disclose the requested records.

Finally, respondents urge this court to recognize an exemption from the public records law for publicly owned and operated hospitals, if such an exemption cannot be inferred from the statute. We refuse to do so. Where the language of a statute is clear, this court has a duty to enforce it. "There is no authority under any rule of statutory construction to add to, enlarge, supply, expand, extend or improve the provisions of the statute to meet a situation not provided for." *State, ex rel. Foster,* v. *Evatt* (1944),

144 Ohio St. 65, 29 O.O. 4, 56 N.E. 2d 265, paragraph eight of the syllabus. The public records law is such a statute.

For the foregoing reasons, we hold that a public hospital, which renders a public service to residents of a county and which is supported by public taxation, is a "public institution" and thus a "public office" pursuant to R.C. 149.011(A), making it subject to the public records disclosure requirements of R.C. 149.43.

Relators contend that they are entitled to reasonable attorney fees pursuant to R.C. 149.43(C). Relators submit that the award of reasonable attorney fees is mandatory. We disagree.

R.C. 149.43(C) provides that the "* * * person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the governmental unit or the person responsible for the public record to comply with division (B) of this section and *that awards* reasonable attorney's fees to the person that instituted the mandamus action. * * *" (Emphasis added.) This provision does not appear to require the award of attorney fees but makes such an award discretionary.[2]

Black's Law Dictionary (5 Ed. 1979) 125, defines "award" as "* * * [t]o give or assign by sentence or judicial determination or after careful weighing of evidence. * * * To confer as being deserved or merited."

That the award of attorney fees is discretionary is further verified by various cases that have disposed of this issue within the context of R.C. 733.61 (taxpayer's suit), which is similar to R.C. 149.43(C). R.C. 733.61 provides

---

[2] Former R.C. 149.99 provided that the aggrieved person "*may* recover a forfeiture of one thousand dollars and reasonable at- torneys fees for each violation." (Emphasis added.) (141 Ohio Laws, Part II, 2761, 2775.)

in relevant part that "* * * the taxpayer shall be allowed his costs, and, if judgment is finally ordered in his favor, he may be allowed, as part of the costs, a reasonable compensation for his attorney." "This section is permissive and not mandatory * * *." *State, ex rel. Scott,* v. *Masterson* (1962), 173 Ohio St. 402, 406-407, 20 O.O. 2d 36, 39, 183 N.E. 2d 376, 380. In *State, ex rel. Hirshler,* v. *Frazier* (1980), 63 Ohio St. 2d 333, 335, 17 O.O. 3d 418, 419, 410 N.E. 2d 1253, 1255, this court refused to award attorney fees to relators, pursuant to R.C. 733.61, since "* * * there has not been demonstrated a sufficient benefit, tangible or intangible, bestowed on the public to warrant such an award. * * *" This court has also refused to award attorney fees where no fund was created by the action out of which such fees could be paid. *State, ex rel. Scott,* v. *Masterson, supra; Grandle* v. *Rhodes* (1959), 169 Ohio St. 77, 8 O.O. 2d 40, 157 N.E. 2d 336. We therefore hold that the award of attorney fees under R.C. 149.43(C) is not mandatory.

We have held in *State, ex rel. Hirshler, supra,* that the relators must demonstrate a sufficient benefit to the public to warrant the award of attorney fees. The court may also consider the reasonableness of respondents' refusal to comply, since attorney fees are regarded as punitive. Respondents argue that they acted in good faith and presented serious legal issues regarding the Hospital System's obligation to open its records to the public. We find no evidence of bad faith on the part of respondents. There was a reasonable legal basis for respondents' refusal to produce the requested documents and relators' prayer for attorney fees is therefore denied.

The requested writ of mandamus is hereby allowed.

*Writ allowed.*

LOCHER, HOLMES, WRIGHT and H. BROWN, JJ., concur.

SWEENEY and DOUGLAS, JJ., concur in part and dissent in part.

DOUGLAS, J., concurring in part and dissenting in part. I concur with the judgment of the majority in allowing the requested writ of mandamus. I would, however, expand the syllabus and the holding of this case. To limit the definition of a "public institution" to one which is supported by "public taxation" will lead, I fear, to arguments about what is "taxation." Is it public taxation when a city provides publicly owned land for a particular enterprise? Is it public taxation when buildings are owned by a city but are, under some arrangement, leased to an allegedly private enterprise? Is it public taxation when a city issues bonds (revenue or otherwise) using the full faith and credit of the city but provides that the obligation be amortized and retired from proceeds obtained from an entity that lists itself as a private non-profit corporation? Further, should our decision that is designed to set the law for the entire state be limited to "public hospitals"?

Inevitably, the foregoing questions will arise. Therefore, I would amend the syllabus of this case to say "any entity" in place of "public hospital" and to say "supported in any way, directly or indirectly, by public funds or is operated on land or in buildings held in public ownership" in place of "supported by public taxation."

With regard to the holding of the majority in denying reasonable attorney fees to relators, I respectfully dissent.

Given the specific language of the statute and the legislative history of the public records legislation, it is difficult for me to understand how the majority can reach its conclusion. The

theory of any public disclosure law is not that an individual is benefited but that the public as a whole is the beneficiary of the government's business being open to the public. When a "public office" refuses a legitimate and reasonable request to make available, pursuant to R.C. 149.43, public records, some individual or organization must be the catalyst to enforce the law. If we, as we are doing today, prevent the recovery of reasonable attorney fees for those who seek to enforce the law on behalf of all of us, then truly those self-appointed surrogates will be "volunteers" in every sense of the word and will find themselves burdened with heavy expenses which they must personally underwrite. There will be little incentive, except possibly for news-gathering organizations, to seek enforcement of the law which, in effect, defeats the very purpose of the law.

The General Assembly obviously realized this problem when it enacted, effective October 15, 1987, a new subdivision (C) to R.C. 149.43. In doing so, the General Assembly repealed R.C. 149.99, which had provided the penalty for violation of R.C. 149.43. As set forth in fn. 2 of the majority opinion, the now repealed penalty was that an aggrieved person "may recover a forfeiture of one thousand dollars and reasonable attorneys fees for each violation."

Arguably, the use of the word "may" by the legislature could be construed to make any award by a court, for violation of the law, discretionary. So what did the General Assembly do when confronted with this problem? It repealed R.C. 149.99 and enacted R.C. 149.43(C), which provides (in part) in no uncertain terms that a "* * * person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the governmental unit * * * responsible for the public

record to comply with division (B) of this section and *that awards reasonable attorney's fees* to the person that instituted the mandamus action." (Emphasis added.)

In reviewing this language the majority says, "[t]his provision does not appear to require the award of attorney fees but makes such an award discretionary." The majority misses the mark. The word "may" in this newly revised section does not modify the reasonable-attorney-fees language. The word "may" only modifies the verbiage "commence a mandamus action." It was placed in the statute so there could be no further question that an allegedly aggrieved party could use the speedy remedy of mandamus, a course of action which had been prevented by a majority of this court in *State, ex rel. Fostoria Daily Review Co., v. Fostoria Hosp. Assn.* (1987), 32 Ohio St. 3d 327, 512 N.E. 2d 1176. An allegedly aggrieved party can still file a civil action in the common pleas court to compel compliance with R.C. 149.43 but now *may* also use mandamus as a vehicle to bring about compliance.

To support its decision regarding attorney fees, the majority cites Black's Law Dictionary and several cases, all of which involve something other than the Public Records Law. Further, in doing so, the majority ignores the explicit language of the Act and, in addition, ignores or overlooks the very precise language found in Section 5 of Am. Sub. S.B. No. 275, effective October 15, 1987, which provides:

"This act if hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, and safety. The reason for the necessity is that, unless the effect of the recent decision of the Ohio Supreme Court in *State, ex rel. Fostoria Daily Review Co., v. Fostoria Hosp. Assn.* (1987), 32 Ohio St. 3d 323

is immediately superseded and a civil action for a writ of mandamus available in all courts with original jurisdiction reestablished as the remedy to enforce the Public Records Law, *members of the general public could be denied access to public records in violation of the Public Records Law, and have no recourse other than to pursue an inadequate, statutorily prescribed remedy in the court of common pleas of injunctive relief, a forfeiture of $1,000, and a reasonable attorney's fees award. Therefore, this action shall go into immediate effect.*" (Emphasis added.)

Accordingly, since the majority ignores the specific language and intent of the General Assembly, ignores the legislative history, frustrates the purpose of the Act and leaves aggrieved parties without a practical remedy, I must dissent from that portion of the majority opinion which denies relators their *reasonable* counsel fees.

By today's decision, the majority leaves an offending governmental unit with no reason to comply with the Act. Any such unit will be defended at the taxpayers' expense since its attorney fees will be paid out of government funds. If the "public office" loses and is not required to pay costs and reasonable attorney fees, then no penalty at all attaches since the General Assembly has repealed R.C. 149.99. Can the majority really believe it is following the will of the legislative branch of government?

SWEENEY, J., concurs in the foregoing opinion.