[This decision has been published in *Ohio Official Reports* at 93 Ohio St.3d 438.]

THE STATE EX REL. STYS ET AL., *v*. PARMA COMMUNITY GENERAL HOSPITAL
ET AL.

[Cite as *State ex rel. Stys v. Parma Community Gen. Hosp.*, 2001-Ohio-1582.]

*Public records—Mandamus sought to compel production of numerous records
and documents of Parma Hospital for inspection—Writ denied, when—
Parma Hospital is not a public institution and therefore not subject to the
Public Records Act, R.C. 149.43.*

(No. 00-1405—Submitted May 30, 2001—Decided October 17, 2001.)

IN MANDAMUS.

_____

ALICE ROBIE RESNICK, J.

{¶ 1} This is an original action in mandamus pursuant to R.C. 149.43 (the Public Records Act). The facts that give rise to this action span more than a forty-year time period but are briefly recounted herein. In January 1957, the cities of Parma and Brooklyn, the municipalities of Parma Heights and North Royalton, and the village of Brooklyn Heights entered into a cooperative agreement in order to provide for the construction, management, and financing of a hospital. This hospital, to be located in the city of Parma, would serve the cooperating municipalities and be known as the Parma Community General Hospital ("Parma Hospital"). In January 1958, the village of Seven Hills also became a signatory to the cooperative agreement.

{¶ 2} All of the cooperating municipalities agreed to issue bonds to pay for their share of constructing and equipping the hospital and to levy taxes outside tax limitations to pay the principal and interest on such bonds. The total revenue generated by the municipalities for the initial construction of Parma Hospital was close to $3 million. It was further agreed that the city of Parma would lease the

Parma Hospital facilities to respondent, Parma Community General Hospital Association (the "association"), a nonprofit charitable corporation organized under R.C. Chapter 1702.

**{¶ 3}** The lease between the city of Parma and the association commenced on December 22, 1958, and through amendments, the lease is currently effective until December 21, 2069. From the inception of the lease until 1998, the association paid rent in the amount of $1 per year. From 1998 through 2019, the rent sum increased to $25,000 per year, and beginning in 2020, the association will be charged $50,000 with an increase each year thereafter.

**{¶ 4}** Parma Hospital officially opened in 1961. The association is responsible for providing the city of Parma with triennial reports to ensure that the leased property is being properly maintained and utilized. The association is solely responsible for all capital improvements, maintenance, and any other ancillary needs related to the daily functioning of Parma Hospital. Since 1995, the association, of its own volition, has obtained accreditation surveys and has also prepared annual reports on Parma Hospital activities to share with the city of Parma and other community leaders. At the expiration of the lease, the association has the right of first refusal; if the right is not exercised, the land, with its improvements, reverts to the city of Parma.

**{¶ 5}** Relators are residents, citizens, and taxpayers of the city of Parma seeking to inspect numerous records and documents of Parma Hospital. The records and documents requested include the association's board of trustees' meeting minutes from 1995 until the present, as well as various applications, drawings, plans, and reports related to the development of the Parma Fay Senior Community Project. Respondents rejected relators' request for the records and documents on the grounds that Parma Hospital is not a "public institution" as defined in R.C. 149.011(A) and is, therefore, not subject to R.C. 149.43.

**{¶ 6}** The cause is now before this court as an original action in mandamus.

**{¶ 7}** This court has clearly established that mandamus is the appropriate remedy to obtain disclosure of public records. *State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn.* (1988), 40 Ohio St.3d 10, 11, 531 N.E.2d 313, 314; *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 109, 529 N.E.2d 443, 444-445. The parties do not dispute, and the case law supports, that a writ of mandamus is the appropriate remedy in this case.

**{¶ 8}** The issue to be decided by this court is whether Parma Hospital, a nonprofit corporation, duly organized under the laws of the state of Ohio to provide hospital facilities, is a public institution pursuant to R.C. 149.011(A), thereby making it subject to R.C. 149.43. We hold today that Parma Hospital is not a public institution and, therefore, deny the writ of mandamus.

**{¶ 9}** In deciding whether Parma Hospital is a public institution, we must consider the statute that defines the term in question. R.C. 149.011(A) provides that a "[p]ublic office" is "any state agency, *public institution*, political subdivision, or any other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." (Emphasis added.) In *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.*, at paragraph one of the syllabus, we stated that "[a] public hospital, which renders a public service to residents of a county and which is supported by public taxation, is a 'public institution' and thus a 'public office' pursuant to R.C. 149.011(A), making it subject to the public records disclosure requirements of R.C. 149.43." Thus, in order for respondent to be deemed a public institution, it must satisfy our three-part test: (1) it must be a public hospital, (2) it must render a public service to residents of a county, and (3) it must be supported by public taxation.

**{¶ 10}** First, Parma Hospital was erected pursuant to a cooperative agreement between the participating municipalities. It was not erected, as relators suggest in their brief, pursuant to R.C. 749.04, which would have made it a hospital operated by the municipalities. Specifically, R.C. 749.04 provides that when the

legislature of a municipal corporation takes possession of land for the purpose of erecting, operating, or rebuilding a hospital, the work shall be vested in a board of five commissioners, consisting of the mayor of the municipality and four trustees appointed by the mayor with the consent of the legislative authority. The affidavit of Paul Cassidy, attorney for the association, indicates that Parma Hospital does not meet the standards set forth in R.C. 749.04. In pertinent part, the affidavit asserts:

"[T]he various communities purposely decided not to create a municipal hospital pursuant to Section 749.04 of the Ohio Revised Code which hospital would have been a public hospital operated by the municipalities."

{¶ 11} Moreover, both parties agree that Parma Hospital is operated by an eighteen-member board of trustees that is composed of residents from all of the cooperating municipalities. The association's board members are not officers in any of the cooperating municipalities, the association decides the terms and conditions of employment for hospital staff, the association maintains the retirement plan of the hospital and other association employee benefits as private programs, and the employees are not covered under PERS. Paul Cassidy's affidavit additionally states:

"[T]he various communities decided to build a building which could be maintained as a charitable hospital and to have the City of Parma lease the building to the Parma Community General Hospital Association which would be responsible for all equipment, repairs, maintenance, and all other costs attendant to the cost of operating its private non-profit hospital without any further cost or control by the municipalities.

"[P]ersons appointed to the Parma Community General Hospital Association Board do not become city officials by such appointment nor was it the intent of the municipalities that such persons become city officials.

"[T]he fiduciary duty of the individuals appointed to the Board of Trustees of [the Association] is to the Association and is not and has never been to the cities which recommended their names for appointment.

"[T]he Board of Trustees represents the interests of [the Association] and not any public body."

{¶ 12} Moreover, affidavits from several board members support the position that Parma Hospital is not a "public hospital":

"The financial records of the Association establish that neither the City of Parma nor any other municipality has provided any subsidization for any of the capital improvements, repairs, maintenance, or other costs for which the Association is responsible pursuant to the lease between the City of Parma and the Association for the Hospital." (Affidavit of Barry L. Franklin, chief financial officer of the association.)

"I perform my duties as a trustee of [the Association] as an independent fiduciary of a Revised Code Chapter 1702 nonprofit corporation. I do not act in a representational capacity for any government entity.

"* * *

"I am not an elected official of any municipality.

"I am not an employee of the Municipality nor do I receive any remuneration from the Municipality as a result of my appointment to the Association's board of trustees." (Affidavits of Joseph Coleman, Charles F. Harle, Ruth Leahy, Bain Matthews, Tom Morris, and Sister M. Joachim Mullen, trustees.)

{¶ 13} It is clear from these affidavits that neither the city of Parma nor any of the other cooperating municipalities have any control over the operation of the hospital. The cooperating municipalities do not make any of the day-to-day decisions that affect the hospital's operation, nor does any board member act in a representational capacity for any of the cooperating municipalities.

{¶ 14} Relators, nonetheless, contend that the case at bar is similar to *Fostoria, Fox,* and *State ex rel. Dist. 1199, Health Care & Social Serv. Union, SEIU, AFL-CIO v. Lawrence Cty. Gen. Hosp.* (1998), 83 Ohio St.3d 351, 699 N.E.2d 1281, in that Parma Hospital should be deemed a public office for purposes of R.C. 149.43. We disagree. In *Fostoria*, the hospital involved was run as a municipal institution for over thirty years, after which time control was vested in the Fostoria Hospital Association to manage, maintain, and operate the hospital. 40 Ohio St.3d at 10, 531 N.E.2d at 314. Furthermore, the lease agreement in *Fostoria* stipulated that the land, building, and equipment would be leased to the Fostoria Hospital Association and that the association would not pay any rent. *Id.* Likewise, in *Fox* and *Lawrence County*, both hospitals involved were owned and operated by the counties in which they were located; neither of those hospitals was ever under the control of a private corporation. We, therefore, conclude that Parma Hospital does not meet the definition of "public office" or "public institution" as outlined in R.C. 149.011(A).

{¶ 15} This should end our inquiry, since Parma Hospital does not meet the first prong of the test outlined in *Fox;* however, due to the importance and frequency of cases involving the Public Records Act, we will proceed to succinctly consider the remaining two prongs.

{¶ 16} The second prong is that the entity must render a public service to residents of a county. Although Parma Hospital does serve the residents of the seven municipalities, this fact alone cannot and does not lead to the conclusion that it is a public institution. As a charitable, nonprofit entity, the association, by its very nature, must provide services of a nonpartisan and nonsectarian character as outlined in its Articles of Incorporation. Unlike the lease in *Fostoria*, however, the lease agreement in the present case does not stipulate that Parma Hospital must serve the public regardless of race, creed, color, or ability to pay. In fact, the lease merely indicates that a hospital shall be erected to serve the cooperating

municipalities, that the hospital shall be located in the city of Parma, and that the association shall operate, manage, and maintain the hospital and have exclusive charge of and responsibility for the same. Furthermore, hospital care is not always provided by government entities and has never been considered a uniquely governmental service. If we were to accept relators' argument in this case, it is conceivable that many corporations could be deemed public institutions, since at some point in time, a public benefit could be derived from a service that is provided.

{¶ 17} Finally, in order to be a public institution, the entity must be supported by public taxation. Relators aver that the initial bonds issued by the cooperating municipalities, along with the amount of rent that the association is required to pay, constitute public taxation. Again, we disagree. The bonds issued were used for the cost of erecting a hospital building; no other funds were generated to support or to equip the hospital. The cooperating municipalities were not responsible for providing funds for insurance coverage, capital improvements, employee compensation, or maintenance and upkeep of Parma Hospital.

{¶ 18} Relators also contend that the lease provision for payment of rent was insufficient to cover the fair market value of the property, but there is no evidence in the record to support this conclusion. This is in stark contrast to *Fostoria*, where there was no provision whatsoever in the lease for the payment of rent.

{¶ 19} For the foregoing reasons, we hold that Parma Hospital does not meet the statutory definition of a "public office" as codified in R.C. 149.011(A), and, therefore, is not subject to the Public Records Act, R.C. 149.43. Our holding today is a narrow one limited to the unique facts and circumstances of this case. We strongly believe that the Public Records Act is a necessary and valuable tool in ensuring that the public has access to the records and documents of all governmental entities. However, there is no doubt in this case that Parma Hospital

is not a public entity, and, therefore does not fall under the purview of R.C. 149.43. For that reason, the writ is denied.

*Writ denied.*

MOYER, C.J., PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and F.E. SWEENEY, JJ., dissent.

_____

**F.E. SWEENEY, SR., J., dissenting.**

{¶ 20} Respectfully, I dissent. The majority's decision to deny the writ of mandamus is based on its finding that Parma Hospital is not a public institution under R.C. 149.011(A). Because I disagree with the majority on this point, I believe that the records sought are subject to disclosure and that the writ should be granted.

{¶ 21} R.C. 149.43(B)(1) mandates that the records of any public office must be made available for inspection. R.C. 149.011(A) defines a "public office" as any public institution established for the exercise of any function of government. In concluding that Parma Hospital is not a public institution, the majority applies the test that we established in *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443, which states that a hospital will be deemed a public office subject to the mandates of R.C. 149.43 if it meets the following three requirements: (1) it must be a public hospital that (2) renders a public service to the residents of the community and that (3) is supported by public taxation. Contrary to the majority's findings, I believe that Parma Hospital does in fact meet these requirements.

{¶ 22} As to the first requirement, it is clear that Parma Hospital is a public hospital. In making this determination, one need only look to the composition of the board of trustees of the Parma Community Hospital Association, the entity responsible for operating the hospital. Sixteen of the eighteen board members are direct appointees of the mayors of six different municipalities. Even the remaining two board members are appointed by these direct appointees. The board sets policy

8

for the management of the hospital and delegates authority to implement such policy. The composition of the board therefore allows the municipalities to effectively control the operations of the hospital. For these municipalities to take such prominent roles in the operation of the hospital without a mechanism to hold them accountable to the public is contrary to the policy behind R.C. 149.43.

{¶ 23} The second requirement of *Fox* is also met, since Parma Hospital is rendering a public service. By operating as a charitable, nonprofit entity, the association provides services without discrimination as to race, creed, or national origin. Furthermore, the lease between the city of Parma and the association evidences an intent on the part of the municipalities to provide hospital services to all of its residents. The lease requires that a hospital be built on the leased premises and explicitly forbids the association to use the premises for anything but a general hospital. In essence, the municipalities have assisted in providing hospital services to their residents by imposing these restrictions.

{¶ 24} The majority finds that a public service is not being provided, since hospital care is "not always provided by government entities" and is not "a uniquely governmental service." Yet, in *Fox*, this court observed that "[a] public office is any entity that exercises *any* function of government." (Emphasis added.) *Fox*, 39 Ohio St.3d at 110, 529 N.E.2d at 445. See, also, R.C. 149.011(A). This was found to encompass both proprietary and governmental functions. *Fox*. Here, the municipalities represented on the board have chosen to take a role in the operation of an entity having a proprietary function, and in doing so they have injected a public component into a service that could otherwise have been provided by a private entity alone.

{¶ 25} As to the final requirement of *Fox*, I believe that the evidence shows that Parma Hospital is supported by public taxation. In *State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn.* (1988), 40 Ohio St.3d 10, 531 N.E.2d 313, we reasoned that "[b]y excusing the payment of rent, the city provided support," since

it passed up income to which it would otherwise have been entitled. *Id.* at 12, 531 N.E.2d at 316. Under the terms of the original lease in this case, the association was required to pay as rent the sum of $1 per year for use of the leased premises. The majority finds no evidence to support the conclusion that the rent was insufficient to cover the fair market value of the property. However, it seems clear that under any set of market conditions one dollar is less than fair market value for the use of such a large piece of property. Even amendments to the lease in recent years that have increased or will increase the rent to $25,000 and $50,000 will surely leave the rent below market value, and therefore the lease will continue to be a means of public support.

{¶ 26} Moreover, we have consistently held that R.C. 149.43 is to be construed liberally in favor of broad access to public records. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 376, 662 N.E.2d 334, 336. Furthermore, any "doubts as to the 'public' status of an entity should be resolved in favor of finding it subject to the disclosure statute." *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 261, 602 N.E.2d 1159, 1161. See, also, *State ex rel. Strothers v. Wertheim* (1997), 80 Ohio St.3d 155, 156, 684 N.E.2d 1239, 1241. The majority disregards these basic principles in concluding that Parma Hospital's records are not subject to disclosure.

{¶ 27} Accordingly, I would find that Parma Hospital meets the *Fox* test and is subject to the requirements of R.C. 149.43, and therefore I would grant the writ.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

———————————

*Law Offices of Teddy Sliwinski* and *Teddy Sliwinski*, for relator Michelle J. Stys.

*Phillips & Co., L.P.A.,* and *Gerald W. Phillips*, for relator Sharon Freeman.

*Bricker & Eckler, LLP, Michael K. Gire* and *Catherine M. Ballard*, for respondents Parma Community General Hospital and Thomas Selden, CEO.

*Baker & Hostetler LLP, David L. Marburger* and *Gina A. Brickley*, in support of granting the writ for *amici curiae* Plain Dealer Publishing Company and Ohio Coalition for Open Government.

*Timothy D. Smith*, in support of granting the writ for *amicus curiae* Taxpayers Coalition.

*Elsass, Wallace, Evans, Schnelle Co., L.P.A.,* and *Stanley R. Evans; Martha Sweterlitsch*, in support of denying the writ for *amici curiae* Ohio Hospital Association; Ohio Association of Child Caring Agencies; Association of Ohio Philanthropic Homes, Housing and Services for the Aging; Government Affairs Committee of Ohio Jewish Communities; Ohio Community Corrections Association; Ohio Community Development Finance Fund; and Ohio YMCA Public Policy Committee.

*Hahn, Loeser & Parks LLP* and *Terri-Lynne B. Smiles*, in support of denying the writ for *amicus curiae* Ohio Association of Nonprofit Organizations.

––––––––––––––––––