**CWYNAR, Appellant,**

**v.**

**JACKSON TOWNSHIP BOARD OF TRUSTEES, Appellee and Cross–Appellant.**

[Cite as *Cwynar v. Jackson Twp. Bd. of Trustees,*
178 Ohio App.3d 345, 2008-Ohio-5011.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2007CA00244.

Decided Sept. 29, 2008.

346

Craig T. Conley, for appellant.

Gregory A. Beck and Andrea K. Ziarko, for appellee and cross-appellant.

DELANEY, Judge.

{¶ 1} Appellant, Thaddeus Cwynar, appeals from the decision of the Stark County Common Pleas Court that granted him a civil forfeiture in the amount of $5,000, plus attorney fees, for violations of Ohio's Public Records law. Appellee and cross-appellant is the Jackson Township Board of Trustees, which appeals the award of attorney fees.

{¶ 2} Appellant brought an action pursuant to R.C. 149.351, claiming that he was aggrieved because he made several public-records requests and appellee failed to comply with the requests. The parties stipulated to the facts, and the trial court restated them, without objection, as follows:

{¶ 3} "This case centers around a public records request made by the plaintiff to the defendant on November 15, 2005, the 'complete personnel files' of certain Jackson Township Police Officers, including Timothy E. McCullough ('McCullough'). In response, on December 2, 2005, counsel for plaintiff received 120 separate pages of McCullough's personnel file, including, *inter alia*, an application for employment and an oath of office.

{¶ 4} "Believing this to be an incomplete production, in March 2006, counsel for plaintiff wrote to the Chief of Police of the Jackson Township Police Department redefining his request to include, among other things, all of McCullough's disciplinary related documents and all documents pertaining to certain newspaper articles concerning McCullough. On March 30, 2006, the plaintiff received 370 additional public records that pertained [to] McCullough. Additional productions of 91 and 59 public records were produced on May 10, 2006 and May 25, 2006, respectively.

{¶ 5} "During the pendency of this action, counsel for plaintiff received 51 pages from a third party 'anonymous' source. These pages contained a partial transcript of an interview involving a citizen's complaint against McCullough, medical records of the citizen, and an interoffice communication from Larry Durian to Stephen Ayers. As stipulated to by the parties, these documents are still not in the defendant's possession, custody or control.

{¶ 6} "Robert Cyperski ('Cyperski') made a Public Records Request similar to that made by the plaintiff. In response, Cyperski was provided with various

records, including twenty documents, comprised mostly of performance evaluations of McCullough, that were not given to the plaintiff.

{¶ 7} "During his deposition, Larry Durian ('Durian') testified that, while he was providing counseling services for the Jackson Township Police Department, he investigated and followed up on a complaint by a private citizen. As part of his involvement, Durian interviewed the complaining citizen's daughter. This interview was recorded on a tape recorder. Additionally, Durian had a phone conversation with the complaining citizen on a tape-recorded line. Further, with respect to this matter, Durian produced two memos to former Police Chief Phillip Parr. Each memo was comprised of two pages and was retained in a locked file in Durian's desk. The memos to Chief Parr and the two cassettes have not been located by the defendant. Nor has same been produced to the plaintiff by his 'anonymous' source.

{¶ 8} "Moreover, Durian generated a memo to Stephen Ayers, Police Prosecutor for the Jackson Township Police Department, regarding his investigation. This memo has not been located by the defendant. However, it was contained within the 51 documents given to the plaintiff by an 'anonymous' source. The memos and cassette tapes have been authenticated by Durian as official work produced while he was in the employ of the defendant. At the oral argument in this matter, counsel for defendant admitted that the defendant has been unable to locate the memos and the cassette tapes and, presumably, no longer has them."

{¶ 9} The parties filed cross motions for summary judgment. Further, the parties stipulated that there were no genuine issues of material fact and that the trial court could resolve the issue with legal analysis.

{¶ 10} The trial court divided the documents into four categories of documents: (1) the Spring 2006 Documents, which numbered 520 separate documents and were produced on March 20, 2006, May 10, 2006, and May 25, 2006; (2) the Sealed Documents, which numbered 51 and were attached to appellee's motion for summary judgment; (3) the Cyperski Documents, which numbered 20 separate documents produced at the request of Robert Cyperski; and (4) the Durian Documents, which were two memoranda and two cassette tapes that appellee conceded cannot be found.

{¶ 11} The trial court found that appellee had violated R.C. 149.351 with regard to five documents: one interoffice memo from Larry Durian to Stephen Ayers, two memoranda Durian produced in his official capacity, and two cassette tapes produced by Durian. The trial court awarded appellant a forfeiture of $5,000 plus attorney fees for these violations. The trial court then held an evidentiary hearing on the award of attorney fees and heard expert testimony. The trial court held that appellant was entitled to $27,506.25 in attorney fees.

{¶ 12} Appellant appeals and raises one assignment of error:

{¶ 13} "I. The trial court erred in finding that appellant was entitled to a civil forfeiture award for only a small portion of the public records at issue."

{¶ 14} Appellee cross-appeals, raising one assignment of error:

{¶ 15} "I. The trial court erred in granting appellant's attorney fees."

I

{¶ 16} Appellant argues that the trial court erred in finding only five violations of the civil-forfeiture statute for public records pursuant to R.C. 149.351.

{¶ 17} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212.

{¶ 18} Civ. R. 56(C) states:

{¶ 19} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶ 20} We are to review de novo the trial court's granting of summary judgment and its interpretation of a statute. *Williams v. Am. Suzuki Motor Corp.*, 5th App. No. 2007–CA–00172, 2008-Ohio-3123, 2008 WL 2571584, ¶ 19.

{¶ 21} This court explained the purpose of the Ohio Public Records Act in *State ex rel. Hunter v. Alliance* (Mar. 11, 2002), 5th Dist. No. 2001CA00101, 2002 WL 391692. "The purpose of the Ohio Public Records Act, R.C. 149.43, is to allow citizens access to public records, thereby exposing government activity to public scrutiny. *State ex rel. Long v. Cardington Village Council* (2001), 92 Ohio St.3d 54, 56, 748 N.E.2d 58 and *State ex rel. Sensel v. Leone* [(Feb. 9, 1998)], Butler App. No. CA97–05–102, * * * 1998 WL 54392, reversed on other grounds (1999), 85 Ohio St.3d 152, 707 N.E.2d 496. The exposure of government activity to public scrutiny is essential to the proper working of a democracy. *Sensel,* supra. (citing *State ex rel. Gannett Satellite Network, Inc. v. Petro* (1997), 80 Ohio St.3d

261, 264, 685 N.E.2d 1223; *State ex rel. WHIO–TV[–]7 v. Lowe* (1997), 77 Ohio St.3d 350, 355, 673 N.E.2d 1360). 'Scrutiny of public records allows citizens to evaluate the rationale behind government decisions so government officials can be held accountable.' *Sensel* (citing *White v. Clinton Cty. Bd. Of Commrs.* (1996) 76 Ohio St.3d 416, 420, 667 N.E.2d 1223). Revised Code 149.351 is a deterrent to the improper disposition of public records. Since the improper disposition of the document is not likely to be made public, or may be kept secretive, the public may not be aware of the act until someone seeks to review an improperly disposed of record."

{¶ 22} R.C. 149.351 states:

{¶ 23} "(A) All records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules adopted by the records commissions provided for under sections 149.38 to 149.42 of the Revised Code or under the records programs established by the boards of trustees of state-supported institutions of higher education under section 149.33 of the Revised Code. Such records shall be delivered by outgoing officials and employees to their successors and shall not be otherwise removed, transferred, or destroyed unlawfully.

{¶ 24} "(B) Any person who is aggrieved by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a record in violation of division (A) of this section, or by threat of such removal, destruction, mutilation, transfer, or other damage to or disposition of such a record, may commence either or both of the following in the court of common pleas of the county in which division (A) of this section allegedly was violated or is threatened to be violated:

{¶ 25} "(1) A civil action for injunctive relief to compel compliance with division (A) of this section, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action;

{¶ 26} "(2) A civil action to recover a forfeiture in the amount of one thousand dollars for each violation, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action."

{¶ 27} The Supreme Court of Ohio interpreted a violation of R.C. 149.351 as "any attempted or actual removal, mutilation, destruction, or transfer of or damage to a public record that is not permitted by law." *Kish v. Akron,* 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, at syllabus 2. In *Kish,* city employees requested documents regarding unused comp time. Id. at ¶ 6. The city terminated the "comp" time program and all documents pertaining to the program, were destroyed. Id. at ¶ 7. The Supreme Court of Ohio held that a violation is

not determined on a case-by-case basis, but rather, the statute is clear that forfeiture be awarded for each violation. Id. at ¶ 42 and 43.

{¶ 28} This court defined a public-records violation as "the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a document, device or item, which documents the organization, functions, policies, decisions, procedures, operations, or other activities of the governmental office." *Hunter,* 5th Dist. No. 2001CA00101, 2002 WL 391692, *4. In *Hunter,* the mayor received the minutes of a hospital board meeting in her official capacity at her office. The mayor of Alliance admitted that she took the minutes home and shredded them. This court held that the forfeiture award pursuant to R.C. 149.351 should be based on the number of records destroyed and not the number of requests made. Further, this court stated that "R.C. 149.351 is punitive in nature and not designed to compensate the aggrieved party. Punitive awards are designed to punish the guilty party and deter the prohibited conduct." Id.

{¶ 29} Before determining whether there is a violation of R.C. 149.351, we must first determine whether the records at issue are public records as defined by R.C. 149.43 and then whether there has been an actual removal, destruction, mutilation, transfer, or damage of those records. For ease of discussion, we will analyze the records in the same categories that the trial court divided the records: the Spring 2006 Documents, the Sealed Documents, the Cyperski Documents, and the Durian Documents.

## The Spring 2006 Documents

{¶ 30} The parties concede that these documents are public records, so our only inquiry is whether the documents were removed or transferred in violation of R.C. 149.351. The trial court made a finding "that there were separate files regarding McCullough, including a personnel file and a disciplinary file." Harley Neftzer, Chief of Police of Jackson Township, in his deposition testimony, stated that the Jackson Township Employee Handbook requires only that an employee's application and appointment be contained in an employee personnel file. The personnel file may contain other information that may be pertinent. The other pertinent information that is contained in the personnel file is at the discretion of the department head.

{¶ 31} Appellant argues that appellee unlawfully removed or transferred records. It is the responsibility of the governmental agency to create the policy on how documents are stored and titled. Appellant requested only the complete personnel file. He did not request all the records pertaining to McCullough's employment. It is the responsibility of the person making the public-records request to identify the records with reasonable clarity. *State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn.,* 97 Ohio St.3d 58, 2002-Ohio-

5311, 776 N.E.2d 82, citing *Taxpayers Coalition v. Lakewood* (1999), 86 Ohio St.3d 385, 391, 715 N.E.2d 179; *State ex rel. Fant v. Tober* (May 20, 1993), Cuyahoga App. No. 63737, 1993 WL 173743, affirmed (1993), 68 Ohio St.3d 117, 623 N.E.2d 1202.

{¶ 32} Upon the initial request for the complete personnel file, Chief Neftzer copied the personnel file. Appellant followed up with a request for more documents. Chief Neftzer then personally began searching for documents throughout the department. The chief found investigative files on Officer McCullough in the detective bureau, and he also found documents in storage boxes kept in his office and in the basement. As the chief found more documents relating to the request, he provided them to appellant. There is no evidence that appellee removed or transferred documents. We find that there is ample evidence that appellee attempted to produce what was requested. However, we do not find that those practices were intended to thwart the public's access to governmental records.

### The Sealed Documents

{¶ 33} The Sealed Documents were documents appellant received from an anonymous source. Appellee did not have these records stored anywhere. These records included a partial transcript of an interview, medical records of a private citizen, and an interoffice memo.

{¶ 34} The partial transcript of an interview of Sandra Roos by Captain Zerby and Stephen Ayers, the Jackson Township Prosecutor, was the first document contained in this package. We find that this partial transcript is not a public record. R.C. 149.43 defines a public record as "records kept by any public office." R.C. 149.011(G) defines a public record as "any document * * * [that] serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." *Hunter,* 5th Dist. No. 2001CA00101, 2002 WL 391692. There is no evidence that this interview was part of an official investigation or even a record maintained by the Jackson Township Police Department.

{¶ 35} The Supreme Court of Ohio addressed a similar issue in *State ex rel. Beacon Journal Publishing Co. v. Whitmore* (1998), 83 Ohio St.3d 61, 697 N.E.2d 640. In *Whitmore,* a judge received letters from members of the public regarding a criminal defendant prior to sentencing. The judge did not rely on these letters. The media requested copies of these records. The Supreme Court of Ohio held that the letters were not public records and were not subject to disclosure because they did not document "the organization, functions, policies, decisions, procedures, operations, or other activities of Judge Whitmore's office." Id. at 63, 697 N.E.2d 640.

{¶ 36} In the case sub judice, the Jackson Township Police Department did not rely on this partial transcript as part of any investigation. Lt. Glenn Goe was assigned to investigate the citizen complaint by the citizen who was allegedly interviewed in this partial transcript. In an affidavit, Lt. Goe attested that he was not aware of any other investigation into this matter. Accordingly, we find that the partial transcript did not document "the organization, functions, policies, decisions, procedures, operations, or other activities" of the Jackson Township Police Department. Therefore, this partial transcript is not a public record.

{¶ 37} The next records we will consider are the medical records of a private citizen who was not an employee of Jackson Township. R.C. 149.43 states:

{¶ 38} " '[R]ecord' " does not mean any of the following:

{¶ 39} "(a) Medical Records * * *."

{¶ 40} Durian, formerly the police counselor and Director of the Juvenile Services Bureau for the Jackson Public Township Police Department, gave deposition testimony in this case that he did not obtain the medical records for Sandra Roos, the subject of the sealed records. There is no viable argument that the medical records were used in the furtherance of any police investigation. Accordingly, we find that the medical records are not public records and are therefore not subject to disclosure.

{¶ 41} The final document to consider in the Sealed Documents is an interoffice memorandum from Durian to Stephen Ayers dated March 6, 1997. Durian testified at his deposition that his interview with Roos was at the direction of Chief Parr, the former Chief of Police of Jackson Township. Chief Parr requested that Durian document the conversation in a memorandum to Ayers. We find that the memorandum was produced by Durian in his official capacity with the Jackson Township Police Department to document an official investigation. We find that the memorandum is a public record.

{¶ 42} The next inquiry is whether the memorandum has been "removed, mutilated, destroyed, transferred or damaged." Jackson Township Police Department does not have this document in its possession. Appellee attempts to argue that the only sanctioned investigation into this matter was by Lt. Goe, but the fact remains that this document exists and appellee does not have possession of it. The trial court concluded that "reasonable minds can come by but to one conclusion as to the fate of such document, i.e., that it has been 'removed, mutilated, destroyed, transferred or damaged' and is no longer accessible by the public." We find that this memorandum was "removed, mutilated, destroyed, transferred or damaged," and appellant was entitled to forfeiture pursuant to R.C. 149.351 in the amount of $1,000 for the loss of the public record.

## The Cyperski Documents

{¶ 43} The next documents we will consider are 20 documents provided to Cyperski pursuant to his public-records request. Appellant argues that he should have received these documents in response to his original request and that they were removed. He also argues he should be awarded $20,000 pursuant to R.C. 149.351.

{¶ 44} We acknowledged that appellee's record-keeping practices were disorganized. Cyperski's public-records request was made after appellant's request. Chief Neftzer found some evaluations in his search and made them part of the investigative file on McCullough, and these were provided to Cyperski. Further, appellant has possession of these documents, as does appellee. There is no evidence that the documents were "removed, mutilated, destroyed, transferred or damaged." Therefore, we find that a forfeiture under R.C. 149.351 is not appropriate.

## The Durian Documents

{¶ 45} The last documents we will consider are the two memoranda and two cassette tapes Durian produced in his official capacity. Appellant contends that the trial court should have awarded forfeiture in the amount of $5,000 instead of the $4,000 it awarded, due to the number of pages in the documents.

{¶ 46} Durian stated that there were two other memoranda he wrote to Chief Parr on the Roos matter. These memoranda were not produced to appellant. Appellee does not have possession of the documents.

{¶ 47} Durian also tape-recorded a conversation with a teenager in the Roos matter. He also had a telephone conversation with the teenager's mother on a recorded telephone line. Durian then gave two cassette tapes to Chief Parr. Appellee does not have possession of the cassette tapes.

{¶ 48} Appellee concedes that the four public records were "removed, mutilated, destroyed, transferred or damaged."

{¶ 49} Appellant relies on *Kish* to argue that the violations were for each page missing. The Supreme Court of Ohio in *Kish* stated that it did "not hold that each page of the pleadings in the case, the trial transcript, the exhibits, and [the] depositions constitutes a separate record." *Kish*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, at footnote 3. Accordingly, we find that in the Durian Documents, there were four violations pursuant to R.C. 149.351, for a forfeiture amount of $4,000.

{¶ 50} Upon viewing the Civ.R. 56 evidence in a light most favorable to the nonmoving party, we find that reasonable minds could conclude only that there

were five violations of the civil forfeiture statute for public records pursuant to R.C. 149.351.

{¶ 51} Appellant's assignment of error is overruled. The forfeiture amount of $5,000 found by the trial court is affirmed.

## CROSS–APPEAL I

{¶ 52} Appellee and cross-appellant argues that the trial court should not have awarded attorney fees pursuant to R.C. 149.351 because Jackson Township acted in good faith and that there was not a sufficient benefit bestowed upon the public to warrant attorney fees. Appellant and cross-appellee submits that the cross-appeal is barred by res judicata because they did not appeal the August 3, 2007 award of attorney fees.

{¶ 53} We find appellant's res judicata argument to be not well taken. On August 3, 2007, the trial court issued its judgment entry that granted appellant's motion for summary judgment and denied appellee's motion for summary judgment. In that same judgment entry, the trial court awarded appellant attorney fees pursuant to statute but set the matter for an evidentiary hearing to determine the amount of the award. On August 21, 2008, the trial court rendered its determination of attorney fees and issued its judgment entry with the final, appealable order language. Appellant and appellee filed their appeals of the August 21, 2007 judgment entry.

{¶ 54} Appellant argues that appellee should have appealed the August 3, 2007 judgment entry in order to present its arguments regarding the award of attorney fees. However, the Supreme Court of Ohio has held that "[w]hen attorney fees are requested in the original pleadings, an order that does not dispose of the attorney-fee claim and does not include, pursuant to Civ.R. 54(B), an express determination that there is no just reason for delay, is not a final, appealable order." *Internatl. Bhd. of Electrical Workers, Local Union No. 8 v. Vaughn Industries, L.L.C.*, 116 Ohio St.3d 335, 2007-Ohio-6439, 879 N.E.2d 187, paragraph two of the syllabus. A judgment entry that awards attorney fees and defers determination of the amount of fees is not a final, appealable order. *Jones v. McAlarney Pools, Spas & Billiards, Inc.*, 4th Dist. No. 07CA34, 2008-Ohio-1365, 2008 WL 757522, at 10, citing *Ft. Frye Teachers Assn. v. Ft. Frye Local School Dist. Bd. of Edn.* (1993), 87 Ohio App.3d 840, 843, 623 N.E.2d 232; *Vannoy v. Capital Lincoln–Mercury Sales, Inc.* (1993), 88 Ohio App.3d 138, 623 N.E.2d 177; *Cole v. Cole* (Nov. 8, 1993), Scioto App. No. 93CA2146, 1993 WL 472883; *Pickens v. Pickens* (Aug. 27, 1992), Meigs App. No. 459, 1992 WL 209498; *State ex rel. VanMeter v. Lawrence Cty. Bd. of Commrs.* (Aug. 25, 1992), Lawrence App. No. 91 CA 25, 1992 WL 208960. Because appellee could not

appeal the August 3, 2007 judgment entry as to the trial court's award of attorney fees because the trial court deferred the determination of the amount of the award, appellant's res judicata argument must fail.

{¶ 55} We review the decision of a trial court on granting or denying of attorney fees under an abuse-of-discretion standard. *State ex rel. Mazzaro v. Ferguson* (1990), 49 Ohio St.3d 37, 41, 550 N.E.2d 464, 468, citing *State ex rel. Beacon Journal Publishing Co. v. Akron Metro. Hous. Auth.* (1989), 42 Ohio St.3d 1, 2, 535 N.E.2d 1366, 1367. The question then is whether the award of attorney fees was "unreasonable, arbitrary, or unconscionable." Id.

{¶ 56} An award of attorney fees under R.C. 149.351 is discretionary. *State ex rel. Sensel v. Leone* (Feb. 9, 1998), 12th App. No CA97–05–102, 1998 WL 54392, reversed on other grounds, (1999), 85 Ohio St.3d 152, 707 N.E.2d 496. The Twelfth District stated that the "statutory language relating to an award of attorney fees is similar in R.C. 149.43 and 149.351." Id. The Ohio Supreme court previously determined that attorney fees under R.C. 149.43 are discretionary. *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443.

{¶ 57} The trial court in this matter applied *Sensel* and *Fox* to its analysis. The trial court must determine whether the public will benefit from the action brought pursuant to R.C. 149.351. Id. at 112, 529 N.E.2d 443; see also *Sensel*. The court must also consider whether the government agency acted reasonably and with good faith. Id.

{¶ 58} The trial court stated, "[T]here was no evidence that the destruction of the Durian Documents was done with malice on the part of the defendant, there was sufficient evidence to demonstrate such destruction was the result of careless recordkeeping by the defendant." Judgment Entry dated August 21, 2007 at 3. But, "the faulty recordkeeping of the defendant violates the public policy behind the Public Records Act and is sanctionable." Id. The trial court further found that the public benefited from appellant's prosecution of a claim pursuant to R.C. 149.351 because "the Jackson Township Police Department has begun to reorganize and improve its recordkeeping in order to make public records more accessible." Id. at 3–4.

{¶ 59} As to the reasonability of the attorney fees in this matter, the trial court found that there were not any duplicative efforts of appellant's counsel between the two filings. Appellant presented unrebutted expert testimony that attorney fees were reasonable and customary for Stark County, Ohio. Further, the expert testified that the expenditure of 123.75 billable hours in this case was reasonable and necessary. The expert opined that he was surprised more hours were not incurred on this case.

{¶ 60} After a review of the record, we find that the $27,506.25 the trial court awarded to appellant in attorney fees pursuant to R.C. 149.351 was not unreasonable, arbitrary, or unconscionable.

{¶ 61} Appellee and cross-appellant's assignment of error is overruled.

{¶ 62} The judgment of the Stark County Common Pleas Court is affirmed.

Judgment affirmed.

WISE, P.J., and EDWARDS, J., concur.