[Cite as *Narciso v. Powell Police Dept.*, 2018-Ohio-4590.]

{¶1}   Ohio's Public Records Act, R.C. 149.43, provides a remedy for production

| | |
|---|---|
| DEAN NARCISO | Case No. 2018-01195PQ |
| Requester | Special Master Jeffery W. Clark |
| v. | REPORT AND RECOMMENDATION |
| POWELL POLICE DEPARTMENT | |
| Respondent | |

of records under R.C. 2743.75 if the court of claims determines that a public office has denied access to public records in violation of R.C. 149.43(B). The policy underlying the Act is that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft,* 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. Therefore, the Act is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records. *State ex rel. Glasgow v. Jones,* 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 13.

{¶2}   On July 24, 2018, requester Dean Narciso, a reporter for the Columbus Dispatch, requested "information related to the domestic violence investigation or report between Courtney and Zachary Smith from October, 2015" from respondent Powell Police Department (Powell PD). Powell PD promptly provided Narciso with copies of an incident run sheet and two pages of the Ohio Uniform Offense Report form related to an October 25, 2015 incident. (Response, Brief at 2-3; Complaint at 1-3.) On August 10, 2018, Powell PD received a second request from Narciso seeking "an opportunity to inspect or obtain copies of public records that pertain to the case file of the Oct. 24 [sic], 2015 domestic violence investigation related to Zach and Courtney Smith, including all audio, transcripts of interviews, photographs and other evidence." (Response, Brief at 3.) This request included "the same case file information for a menacing investigation in November, 2015." (Complaint at 8.) Counsel for Powell PD responded that aside from records previously provided, all requested records were

excepted from disclosure as confidential law enforcement investigatory records (CLEIRs), specifically as records that would reveal the identity of an uncharged suspect. R.C. 149.43(A)(2)(a). (Complaint at 8-9; Response, Brief at 3-4.)

{¶3}    On August 15, 2018, Narciso filed a complaint pursuant to R.C. 2743.75 alleging denial of access to public records by Powell PD in violation of R.C. 149.43(B). On August 22, 2018, the court was notified that the case had not been resolved in mediation. On September 6, 2018, Powell PD filed its answer. (Response.) On September 28, 2018, Narciso filed a reply. On October 2, 2018, Powell PD filed its response to an order of September 13, 2018 (Response to Order), and has filed a complete and unredacted copy of the withheld records under seal (Sealed Records).

{¶4}    Powell PD asserts that: 1) all the withheld records are exempt as having a high probability of revealing the identity of an uncharged suspect, 2) release of parts of the records would disclose information that would endanger the physical safety of a crime victim or witness, 3) some records are subject to a constitutional right of privacy, and 4) any items that were not actually used to document the investigation are non-records.[1]

**Burdens of Proof**

{¶5}    In an action to enforce Ohio's Public Records Act (PRA), the burden is on the requester to prove an alleged violation. In mandamus enforcement actions,

> [a]lthough the PRA is accorded liberal construction in favor of access to public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence."

---

[1] Although Powell PD did not assert all these defenses in its pre-litigation responses to Narciso, the initial explanation for denial "shall not preclude the public office or the person responsible for the requested public record from relying upon additional reasons or legal authority in defending an action commenced under division (C) of this section." R.C. 149.43(B)(3). Also, Powell PD initially asserted the CLEIRs "confidential information source" and "confidential investigatory techniques or procedures" exceptions as defenses (Response, Brief at 10), but withdrew both in its response to the special master's order of September 13, 2018. (Response to Order at 5-6.)

*State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 428, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 15. Entitlement to relief under R.C. 2743.75 must likewise be established by clear and convincing evidence. *Hurt v. Liberty Twp.*, 5th Dist. Delaware No. 17CAI050031, 2017-Ohio-7820, ¶ 27-30.

{¶6}    If a public office asserts an exception[2] to the Public Records Act as the basis for withholding records, the burden shifts to the public office to establish its applicability:

> Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. * * * A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception.

*State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 10. *See State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 153 Ohio St.3d 63, 2017-Ohio-8988, 101 N.E.3d 396, ¶ 15; *State ex rel. Nat'l Broad. Co. v. Cleveland*, 38 Ohio St.3d 79, 82-83, 526 N.E.2d 786 (1988), paragraph 2 of the syllabus. An exception is a state or federal law prohibiting or excusing disclosure of items that otherwise meet the definition of a "record" of the office, including those enumerated in R.C. 149.43(A)(1). The Act provides a catch-all exception for "[r]records the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(v).

{¶7}    However, the defense that an item is not a record does not assert an exception, and the burden of proof remains with the requester. Thus, when a public office claims that an item is not a "record" of that office,

> *a requester must establish* that they are (1) documents, devices, or items, (2) created or received by or coming under the jurisdiction of CMHA, (3) which serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office. See *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005 Ohio 4384, 833 N.E.2d 274, ¶ 19.

---

[2] The terms "exception" and "exemption" are used interchangeably in case law, and in this report.

(Emphasis added.) *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 149, 2012-Ohio-115, 962 N.E.2d 297, ¶ 23.[3] *O'Shea* follows *Dispatch v. Johnson*, where the Court held:

> Therefore, in order to establish that state-employee home addresses are records for purposes of R.C. 149.011(G) and 149.43, *the Dispatch must prove* that home addresses are (1) documents, devices, or items, (2) created or received by or coming under the jurisdiction of the state agencies, (3) which serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office. *If the Dispatch fails to prove* any of these three requirements, it will not be entitled to a writ of mandamus to compel access to the requested state-employee home addresses because those records are not subject to disclosure under the Public Records Act.

(Emphasis added.) *Id.* at ¶ 19. Thus, the burden is upon the requester to show that disputed items meet the definition of "record" contained in R.C. 149.011(G). *But see Hurt v. Liberty Twp.* at ¶ 75-78.

**Redaction vs. "Inextricably Intertwined"**

{¶8}    Powell PD claims that the exemptions it asserts, mostly for short items such as names and personal identifiers, are so "inextricably intertwined" with the thousand pages-plus investigatory file that it may withhold the entire file from public view. (Response, Brief at 3-6.) Review of this assertion requires a careful analysis of the content and nature of each document – and does not permit withholding an entire document as "inextricably intertwined" merely because an exempt name was mentioned somewhere in it. *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, ¶ 13-14. Axiomatically, the extension of an exemption to surrounding non-exempt material must be as strictly construed against the public office and in favor of disclosure as the underlying exemption. Moreover, courts and records

---

[3] Similarly, where an office attests that requested records do not exist, the requester has the burden to establish that the records exist by clear and convincing evidence. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 22-26.

custodians may not "create new exceptions to R.C. 149.43 based on a balancing of interests or generalized privacy concerns" so as to withhold records that are plainly non-exempt. *State ex rel. WBNS TV, Inc. v. Dues*, 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d ¶ 30-39. Nor may a public office deny or delay disclosure merely because it is burdensome or inconvenient. *See State ex rel. Warren Newspapers v. Hutson*, 70 Ohio St.3d 619, 623, 640 N.E.2d 174 (1994). Information documenting the substance of a law enforcement investigation may not be found inextricably intertwined with exempt identifiers solely to conceal unpleasant or embarrassing facts.

{¶9}    The purpose of the Public Records Act "is to expose government activity to public scrutiny, which is absolutely necessary to the proper working of a democracy." *State ex rel. Whio-Tv-7 v. Lowe*, 77 Ohio St.3d 350, 355, 673 N.E.2d 1360 (1997). Further,

> [T]he people's right to know includes 'not merely the right to know a governmental body's final decision on a matter, but the ways by which those decisions were reached.' See *State ex rel. Gannett Satellite Information Network v. Shirey* (1997), 78 Ohio St.3d 400, 404, 1997 Ohio 206, 678 N.E.2d 557, citing *White*, 76 Ohio St.3d at 419, 667 N.E.2d 1223.

*Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 26. *See generally Cwynar v. Jackson Twp. Bd. of Trs.*, 178 Ohio App.3d 345, 2008-Ohio-5011, 897 N.E.2d 1181, ¶ 21 (5th Dist.). The Supreme Court has "consistently construed the Public Records Act to provide the broadest access to government records." *State ex rel. Cincinnati Enquirer v. Winkler*, 101 Ohio St.3d 382, 2004-Ohio-1581, 805 N.E.2d 1094, ¶ 5.[4] Exemptions to this broad access are provided through narrowly construed statutory exceptions, and not through court-created tests concerning policy matters:

> See, e.g., *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 266, 602 N.E.2d 1159 ("It is the role of the General

---

[4] In related First Amendment analysis, the Court noted that "[t]he right of public access, as examined in the context of a criminal proceeding, serves several lofty goals. First, a crime is a public wrong, and the interest of the community to observe the administration of justice in such an instance is compelling." *Id.* at ¶ 9.

> Assembly to balance the competing concerns of the public's right to know and *individual citizens' right to keep private certain information that becomes part of the records of public offices*. The General Assembly has done so, as shown by numerous statutory exceptions to R.C. 149.43[B], found in both the statute itself and in other parts of the Revised Code"); *State ex rel. James v. Ohio State Univ*. (1994), 70 Ohio St.3d 168, 172, 1994 Ohio 246, 637 N.E.2d 911 ("in enumerating very narrow, specific exceptions to the public records statute, the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure").

(Emphasis added.) *WBNS TV, Inc. v. Dues* at 36.

{¶10} In 2007, the General Assembly codified in R.C. 149.43(B)(1) the requirement that public offices may remove only specifically exempt information from records:

> If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt.

Sub. H.B. 9, 126th Gen. A. (2006) (eff. Sept. 29, 2007.) *See State ex rel. Nat'l Broad. Co. v. Cleveland*, 38 Ohio St.3d 79, 526 N.E.2d 786 (1988) paragraph four of the syllabus, and its progeny. As a practical matter, withholding exempt information while making the remaining information available is accomplished by redaction:

> "Redaction" means obscuring or deleting any information that is exempt from the duty to permit public inspection or copying from an item that otherwise meets the definition of a "record" in section 149.011 of the Revised Code.

R.C. 149.43(A)(11). A requester is thus entitled to obtain the non-exempt record that surrounds any redacted information, unless the entire record is "inextricably intertwined" with the exempt material. *State ex rel. Anderson v. Vermillion*, 134 Ohio St.3d 120, 2012-Ohio-5320, 980 N.E.2d 975, ¶ 19-24; *State ex rel. Pietrangelo v. Avon Lake*, 146 Ohio St.3d 292, 2016-Ohio-2974, 55 N.E.3d 1091, ¶ 10-17.

{¶11}  The extent of any redaction must be carefully restricted to avoid concealing substantive documentation of the investigation. "The Public Records Act serves a laudable purpose by ensuring that government functions are not conducted behind a shroud of secrecy." *State ex rel. ESPN, Inc. v. Ohio State Univ.*, 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 40. The claim that an *entire* law enforcement investigation file is "inextricably intertwined" with exempt items is particularly fraught, because it denies the public the opportunity to review the police agency's exercise of extensive, intrusive, and consequential powers. Without access to the non-exempt allegations, investigatory inquiries, evidence, reports, and interagency communication, the public cannot conduct a meaningful review of the department's activities. *See State ex rel. Quolke v. Strongsville City Sch. Dist. Bd. of Educ.*, 142 Ohio St.3d 509, 2015-Ohio-1083, 33 N.E.3d 30, ¶ 55. Therefore, following the redaction of exempt personally identifiable information from investigatory records, the remainder must be disclosed. *ESPN* at ¶ 41.

{¶12}  To judge whether redacting material beyond the exempt items is necessary, the first question is whether the remaining information "otherwise meets the definition of a 'record' in section 149.011 of the Revised Code," R.C. 149.43(A)(11). If redacting just the exempt items has so thoroughly eviscerated the document that no record information remains, then the exempt information was "inextricably intertwined" and the entire document may be withheld. But if "record" information documenting the activities of the office does remain, then only the exempt information may be redacted from the document. The remainder must be disclosed. A public office's bare assertion that information remaining after redaction would be "meaningless" to the requester is not controlling. *Anderson* at ¶ 19. "Nor is there any exception to the explicit duty in R.C. 149.43(B)(1) for public offices to make available all information that is not exempt after redacting the information that is exempt." *Id.*

{¶13} The other question is whether redaction of the exempt items has accomplished the express terms of the exemption. For example, the non-exempt contents of an electronic database were found to be inextricably intertwined with its copyright-protected operating software in *State ex rel. Gambill v. Opperman*, 135 Ohio St.3d 298, 2013-Ohio-761, 986 N.E.2d 931, ¶ 21-25. The data could not be disclosed without providing the exempt software, and thus they were inextricably intertwined. In some older cases, portions of law enforcement records have been found inextricably intertwined with the identity of uncharged suspects, albeit without detailed explanation of how and why. *E.g. State ex rel. Master v. Cleveland*, 76 Ohio St.3d 340, 342, 1996 Ohio 300, 667 N.E.2d 974 (1996) More recently, an uncharged suspect's identity was found not to be inextricably intertwined with investigatory records where,

> if the sheriff's office redacts the priest's name, the name, location, and diocese of the church where he worked, and other specific identifying information, the disclosure of the records will not create a high probability of disclosure of the priest's identity.

*State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, ¶ 14. *See also Gannett GP Media, Inc. v. Ohio Dep't of Pub. Safety*, Ct. of Cl. No. 2017-Ohio-00051-PQ, 2017-Ohio-4247, ¶ 48-49. To be sure, a reader who has prior personal knowledge of the matter, such as the reportee/requester in *Rocker*, may know the identity behind every redaction, but the Supreme Court does not condition the extent of redaction on the knowledge of the requester. Powell PD agrees that application of the exemption is not affected by widespread knowledge of the identity of the suspect. (Response, Brief at 2-3.) As a test that meets the mandate of R.C. 149.43(B)(1) and the example of *Rocker*: if a person unfamiliar with the case is unable to discern the identity of a person after reading the record from which unique identifiers have been redacted, then the redactions satisfy the "identity" exemption and the identifiers are not inextricably intertwined with the remainder of the record.

{¶14} Thus, to the extent that specific items such as names or identifiers are found to be exempt, a public office must redact only the specific words, numbers, or items that are subject to the exception, unless the court agrees that they are inextricably intertwined with additional parts of the record.

### Confidential Law Enforcement Investigatory Records (CLEIRs) Exception

{¶15} Under R.C. 149.43(A)(1)(h), "public record" does not include confidential law enforcement investigatory records (CLEIRs). R.C. 149.43(A)(2)(c) defines CLEIRs as follows:

> (2) "Confidential law enforcement investigatory record" means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:
>
> > (a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;
> >
> > (b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose the source's or witness's identity;
> >
> > (c) Specific confidential investigatory techniques or procedures or specific investigatory work product;
> >
> > (d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

The CLEIRs exception involves a two-part test; first, whether a record "pertains to a law enforcement matter" of a criminal, quasi-criminal, civil, or administrative nature, and second, whether release of the record would create a high probability of disclosure of information detailed in subdivisions (2)(a) through (d). *State ex rel. Miller v. Ohio State Highway Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 25.

**Records Pertaining to a Law Enforcement Matter of a Criminal Nature**

{¶16} A record "pertains to a law enforcement matter of a criminal nature" if it arises from suspicion by an agency with authority to investigate of the violation of a criminal law. *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety,* 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 39. Powell PD has plenary police power to enforce the criminal laws within its jurisdiction, and the initial incident report forms and *in camera* inspection of the investigatory records both show that these investigations arose from suspicion of violations of criminal law. I find that Powell PD has satisfied the first part of the test - that the withheld records "pertain to a law enforcement matter of a criminal nature."

{¶17} With regard to the second parts of the CLEIRs test, Powell PD asserts that the withheld records fall in whole or in part under: 1) subdivision (A)(2)(a), which is commonly referred to as the "uncharged suspect" exception, and 2) subdivision (A)(2)(d), which will be referred to as the "physical safety" exception. Powell PD does not assert the "investigatory work product" exception in subdivision (A)(2)(c), as this exception does not apply where a criminal proceeding is no longer pending or highly probable. *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor*, 89 Ohio St.3d 440, 445-446, 732 N.E.2d 969 (2000); (Complaint at 9; Sealed Records at 0041, 0273, 0286, 0358.)

{¶18} Before considering application of the two CLEIRs exceptions, the court must address the threshold issue of whether Powell PD has produced complete copies of the initial incident reports in this case in conformity with *State ex rel. Beacon Journal Publ. Co. v. Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511 (2001).

**Initial Incident Reports**

{¶19} Powell PD acknowledges that initial incident reports are not subject to any CLEIRs exception, and has provided Narciso with the first two pages of the Ohio Uniform Offense Reports for the October 25, 2015 incident, and the first three pages of the Ohio Uniform Offense Reports for the November 9, 2015 incident. (Response, Brief at 2-3, 12

(ref. Document Tab Nos. 21, 22); Complaint at 4-5; Sealed Records at 0273-0275.) *See Maurer* at 56-57 (CLEIRs exceptions, including uncharged suspect and physical safety, do not apply to incident reports). Narciso cannot review records under seal to evaluate whether the initial incident reports were provided in their entirety, and the court must therefore conduct a review *in camera*. That review reveals that both initial incident reports include additional material that must be disclosed.

{¶20} "[I]ncident reports initiate criminal investigations, but are not part of the investigation." *Maurer* at 56; *State ex rel. Rasul-Bey v. Onunwor*, 94 Ohio St.3d 119, 120, 760 N.E.2d 421 (2002). *See generally Gannett GP Media, Inc. v. Chillicothe PD*, Ct. of Cl. No. 2017-00886-PQ, 2018-Ohio-1552, ¶ 17-26. In *Maurer*, the incident report was made on an Ohio Uniform Incident Report (UIR) form. *Maurer* at 54. The UIR form (or an electronic version thereof) often serves as the initial offense or incident report for law enforcement agencies. *See State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 13. In the UIR Training Manual at p. 2, the Administrative Section is described as including the purpose "to record preliminary information regarding the incident."[5] The reporting deputy in *Maurer* attached thirty-five pages of transcripts of taped statements by law enforcement officers and written statements by other witnesses to the UIR form, and referenced them in the space used to describe events. *Maurer* at 54.[6] The *Maurer* Court held that "this report, including the typed narrative statements, is not a confidential law enforcement investigatory record." *Maurer* at 56. *Accord Rasul-Bey, supra.*

---

[5] *Ohio Uniform Incident Report (UIR) Training Manual* (August 2011), http://ocjs.ohio.gov/oibrs/ Forms/UIR_Training.pdf. (Accessed October 10, 2018.) The UIR is a publication of the Ohio Department of Public Safety, Office of Criminal Justice Services, and is designed to capture crime data for the Ohio Incident-Based Reporting System and the FBI National Incident-Based Reporting System. *Id.* at 1. The basic form is contained in the Manual immediately following the Table of Contents.

[6] "However, nothing in the *Maurer* decision requires that a narrative witness statement incorporated by reference in an incident report must be physically attached to the incident report before it takes on the cloak of a public record." *State ex rel. WBNS 10 TV v. Franklin Cty. Sheriff's Office*, 151 Ohio App.3d 437, 2003-Ohio-409, 784 N.E.2d 207, ¶ 21.

{¶21} Powell PD officers also utilized the UIR form to initiate the investigation of incidents in this case,[7] and Powell PD partially complied with its obligation to disclose the initial incident reports by providing the first few pages. However, *in camera* review of the withheld records shows that additional pages of the UIR forms were completed on the same date,[8] by the same officer, and reflect initial factual information received from the reportee. As in *Maurer*, witness statements and other materials constitute part of these incident reports and are thus not subject to the CLEIRs exceptions. The reports are analyzed separately below.

**Incident Report No. 15-1190**

{¶22} Incident Run Sheet 91-15-120093 shows receipt of a telephone complaint on the evening of October 25, 2015 regarding a domestic matter. The caller advised she would come to the station in the morning to make a report. (Complaint at 2-3; Sealed Records at 0001-0002.) The next morning, Patrol Officer Boruchowitz, Badge No. 712, met with reportee Courtney Smith. Boruchowitz entered information provided by Smith into seven pages of UIR forms identified by Incident Number 7-15-001190 (Sealed Records at 0004-0008, 0010-0011) and completed a Patrol Action Cover Sheet. (Sealed Records at 0054.) The first two form pages are titled Ohio Uniform Offense Report, and Incident Report – Part 2. The third page is titled Suspect/Arrest Supplement. The fourth page is titled Property Supplement. The fifth page is titled Victim/Witness Supplement. The last two form pages are titled Narrative Supplement and continue the reportee's factual recitation of her complaint, i.e., an extension of the Narrative field in Incident Report – Part 2.[9] The Patrol Action Cover Sheet is a checklist of contacts, paperwork,

---

[7] Page 1 of the Powell PD form is titled "Ohio Uniform *Offense* Report," and page 2 is titled "*Incident* Report Part 2." The form fields in both pages are functionally identical to the UIR form.

[8] "Date" in the reporting officer line indicates the date the officer signed the report. *See* UIR Manual at 45.

[9] Despite the addition of "- Investigative Notes" to the form title, the contents reflect only initial factual information received from the reportee. Further, these pages are apparently those described as "the initial narrative" redacted and disclosed on November 6, 2015. (Sealed Records at 0013.)

and actions taken by the reporting officer. All seven pages are dated October 26, 2015, and all show Officer Boruchowitz as the reporting officer. All seven pages reflect factual information received from the reportee. Based on chronology, content, and authorship, I find that Sealed Records pages 0004-0008, 0010-0011, and 0054 constitute the initial incident report for Incident No. 15-1190.

{¶23} Further, the Reportee Section "Statements Obtained" field references contemporaneous oral and written statements obtained from the reportee. (Complaint at 5; Sealed Records at 0005.)[10] The records contain a Powell PD Witness Statement form for Incident No. 15-1190 dated October 26, 2015. (Sealed Records at 0042-0045.) Based on chronology, content, and reference, I find that the written witness statement obtained on October 26, 2015 constitutes part of the initial incident report for Incident No. 15-1190.

**Incident Report No. 7-15-001236**

{¶24} Incident Run Sheet 91-15-126108 shows receipt of a telephone complaint on November 9, 2015 regarding an unspecified complaint. (Sealed Records at 0272.) Patrol Officer Maddox, Badge No. 730, was dispatched to the reporting address where he took a report from reportee Courtney Smith. (*Id.*) Maddox entered information from Smith into four pages of UIR forms identified by Incident Number 7-15-001236. (Sealed Records at 0273-0276.) The first two form pages are titled Ohio Uniform Offense Report, and Incident Report – Part 2. The third page is titled Suspect/Arrest Supplement. The fourth page is titled Narrative Supplement, and the first paragraph on the form continues the reportee's factual recitation of her complaint, i.e., an extension of the Narrative field in Incident Report – Part 2.[11] All four pages are dated November 9, 2015, and all show Officer Maddox as the reporting officer. All four pages reflect factual information received

---

[10] A checkbox in the October 26, 2015 Patrol Action Cover Sheet indicates that a written witness statement was either obtained, or refusal to provide one was documented. (Sealed Records at 0054.)

[11] Despite the addition of "- Investigative Notes" to the title, the first paragraph reflects only initiating factual information received from the reportee. The remainder of the page contains investigatory notes.

from the reportee. Based on chronology, content, and authorship, I find that Sealed Records pages 0273-0275, page 0276 from the beginning of the page through the first paragraph of narrative text, and page 0287 constitute the initial incident report for Incident No. 15-1236.

{¶25} Further, Officer Maddox's Patrol Action Cover Sheet dated November 9, 2015 reflects that a written witness statement was either obtained, or refusal to provide one was documented. (Sealed Records at 0287.) The records contain a Powell PD Witness Statement form for Incident No. 15-1236 dated November 9, 2015. (Sealed Records at 0042-0045.) Based on chronology, content, and reference, I find that the written witness statement obtained on November 9, 2015 constitutes part of the initial incident report for Incident No. 15-1236.

### Investigatory Records

{¶26} The "initial incident report" does not include later investigatory notes, updates and reports, even if they are documented using UIR form pages. After the point where an investigation has been initiated, the subsequent work product of investigators, including the reporting officer, are presumptively "investigatory" work product. *See State ex rel. Fields v. Cervenik*, 8th Dist. Cuyahoga No. 86889, 2006-Ohio-3969, ¶ 2-7; *Gannet GP Media, Inc. v. Chillicothe Police Dept.* Ct. of Cl. No. 2017-00886, 2018-Ohio-1552, ¶ 14, 19. I find that subsequent UIR form pages of Incident Report No. 7-15-001190 (Sealed Records at 0012-0041) contain investigative notes and reports, interagency communication, and case clearance determination. Subsequent UIR form pages of Incident Report No. 7-15-001236 (Sealed Records at 0277-0286) consist of an investigative report submitted several months later by an assigned detective. I find that these later, investigatory records are not part of the initial incident report in either case. The notes, reports, evidence, and other materials created and assembled even later in the investigation are likewise not part of the initial incident reports. They are thus subject to the application of CLEIRs exceptions.

**Waiver**

**{¶27}** Separate from the analysis above, review of the records under seal shows that Powell PD released a redacted copy of the "initial narrative" in Incident Report No. 7-15-001190 to a person identified by name and email address. (Sealed Records at 0013.) There is no indication that the recipient was affiliated with any law enforcement agency. I find that to the extent unredacted content of the initial narrative (Sealed Records at 0010-0011) was disclosed to this member of the public, any exception to public records disclosure of that content has been waived. *State ex rel. Gannett Satellite Info. Network v. Petro*, 80 Ohio St.3d 261, 265, 685 N.E.2d 1223 (1997); *State ex rel. Zuern v. Leis*, 56 Ohio St.3d 20, 22, 564 N.E.2d 81 (1990).

**Records Identifying an Uncharged Suspect**

**{¶28}** "Confidential law enforcement investigatory records" includes "any record * * * the release of [which] would create the high probability of disclosure of * * * [t]he identity of a suspect who has not been charged with the offense to which the record pertains." R.C. 149.43(A)(2)(a). The exception exists to protect the identity of an uncharged suspect, not to conceal investigatory information about the offense:

> [T]he exception would appear to apply *only* to information that would create a high probability of disclosing the identity of the suspect, *not* to all of the information about the suspect. See *generally* State ex rel. Toledo Blade Co. v. Telb, 50 Ohio Misc.2d 1, 552 N.E.2d 243 (C.P. Lucas County 1990). * * * The existence of non-public record material in such a document does not permit withholding the entire document from public access. Instead, the excepted material must be redacted, and the public record portion must be released. *See Outlet Communications*; State ex rel. National Broadcasting Co. v. City of Cleveland, 38 Ohio St.3d 79, 526 N.E.2d 786 (1988); State ex rel. Dispatch Printing Co. v. Wells, 18 Ohio St.3d 382, 481 N.E.2d 632 (1985). A cautionary note, however, must be raised. When the information contained in a record is heavily intertwined with information *solely* concerning the identity of the suspect, the other information may be withheld if a substantial likelihood exists that the identity of the suspect could be inferred from the intertwined information. McGee, 49 Ohio St.3d at 60, 550 N.E.2d at 947.

(Emphasis Sic.) 1990 Ohio Atty.Gen.Ops. No. 101 at *17-19.

**{¶29}** Narciso agrees that the name and specific identifiers of the uncharged suspect may be redacted from the investigatory records. (Reply at 2.) R.C. 149.43(A)(2)(a) does not exempt investigatory information about the facts alleged, evidence obtained, investigator activities and determinations, or any other item that does not disclose the identity of the suspect, but Powell PD asserts that the identifiers are so inextricably intertwined with every portion of the investigatory records "that no amount of redaction will reduce the probability of identification of the suspect." (Response, Brief at 5.) Narciso counters that this assertion is dubious as a matter of fact, and contrary to relevant case law. (Reply, *passim.*)

**{¶30}** Powell PD first claims that if a requester requests investigatory records by the name of the suspect, the law enforcement agency may withhold the entire file:

> [T]he original request sought information relative to an individual identified by the Requester. Any response to such a request could have affirmatively identified the uncharged suspect, thus defeating the purpose of the exemption.

(Response to Order at 3.)[12] While "any response" to a request for an investigation by the name of the suspect will indeed confirm that he was or is a suspect, a response is nevertheless statutorily required. An agency may not respond "no information available" to a request where responsive records exist, without violating its duty under R.C. 149.43(B)(2) to provide "an explanation, including legal authority, setting forth why the request was denied." *State ex rel. Doe v. Smith*, 123 Ohio St.3d 44, 2009-Ohio-4149, 914 N.E.2d 159, ¶ 43. Requests for investigatory records containing uncharged suspects are routinely made by the complaining witness, by the suspect himself, and others who are aware of the suspect's name. *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 1-2; *State ex rel. Musial v.*

---

[12] Powell PD also offers a variation of this argument – that requesting the file using the names of two people without stating which is the suspect would result in identification of the suspect when only one name is redacted. (Response, Brief at 5.)

*N. Olmsted*, 106 Ohio St.3d 459, 2005-Ohio-5521, ¶ 3-7, 22-25. Regardless, only those portions of investigative records that actually disclose the identity of the uncharged suspect can be withheld, and not the entire file, even when the criminal investigation of the suspect is public knowledge. *State ex rel. Patrolmen's Benevolent Assn. v. Mentor,* 89 Ohio St.3d 440, 446-449, 732 N.E.2d 969 (2000). As a practical matter, requesters often seek incident reports first and, since the name of an uncharged suspect cannot be redacted from an incident report, *State ex rel. Beacon Journal Publ. Co. v. Maurer*, 91 Ohio St.3d 54, 55-57, 741 N.E.2d 511 (2001), such requesters are likely to be aware of the identity behind redacted names when provided with the investigatory records. Finally, Powell PD's argument is easily circumvented if a person requests the investigation records using the date, location, offense type, reporting officer, and/or incident number, rather than the name of the suspect. I find that Powell PD may not deny access to the entire investigatory file merely because the request identifies the investigation by the name of the suspect or other person involved.

{¶31} The analysis then turns to the scope of redactions that are permitted. The narrowly drafted non-expiring CLEIRs exemptions[13] for records the release of which would disclose confidential information sources, confidential investigatory techniques, information endangering personal safety, and suspect identity, serve to protect specific material within investigatory records without depriving the public of its rightful access to the rest of the investigation. As to information that may be redacted as "creating a high probability of disclosure of * * * [t]he identity of a suspect who has not been charged," this case is analogous to *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327. In *Rocker*, the sheriff's office released the

---

[13] The "investigatory work product" exception expires at the conclusion of the investigation. The other CLEIRs exceptions continue to apply despite the passage of time. *State ex rel. Musial v. N. Olmsted*, 10t Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, ¶ 26-28 (CLEIRs uncharged suspect); *State ex rel. Martin v. Cleveland*, 67 Ohio St.3d 155, 157, 616 N.E.2d 886 (1993) (CLEIRs confidential information source and threats to physical safety).

initiating incident report, but withheld the entire subsequent criminal investigation as "inextricably intertwined" with the identity of the suspect. Rejecting the sheriff's argument that past decisions supported such indiscriminate withholding, the *Rocker* Court stated:

> Notably, in *Master*, 76 Ohio St.3d at 342, 667 N.E.2d 974, *Ohio Patrolmen's Benevolent Assn.*, 89 Ohio St.3d at 448, 732 N.E.2d 969, and *Musial*, 106 Ohio St.3d 459, 2005 Ohio 5521, 835 N.E.2d 1243, at P 29, we did not hold that the claimed uncharged-suspect exemption applied to *all* the requested records.

> Therefore, the court of appeals erred in concluding that all the withheld investigative records were covered by a blanket uncharged-suspect exemption.

(Emphasis Sic.) *Id.* at ¶ 14. The Court found instead that:

> For most of these records, if the sheriff's office redacts the priest's name, the name, location, and diocese of the church he worked at, and other specific identifying information, the disclosure of the records will not create a high probability of disclosure of the priest's identity. For example, after the priest's name and specific identifying information are redacted, the call record does not disclose the priest's identity.

*Id.* The Court emphasized in conclusion:

> By so holding, we adhere to our strict construction of exceptions to the public Records Act as well as our duty to resolve any doubt in favor of access to public records.

*Id.* at ¶ 16. Powell PD directs the court to two older law enforcement cases which did *not* find that all records of the investigation could be withheld, *see Rocker* at ¶ 14, but only that most of the records were inextricably intertwined with the identities of multiple suspects in *State ex rel. Master v. Cleveland*, 76 Ohio St.3d 340, 342, 667 N.E.2d 974 (1996), and that endeavoring to redact only protected information from a particular 12-page report would be an "exercise in futility" in *State ex rel. Strothers v. McFaul*, 122 Ohio App.3d 327, 330-332, 701 N.E.2d 759 (8th Dist. 1997) (a one-page summary of the report *was* released). Neither case compels a different conclusion under the facts and circumstances in this case.

**{¶32}** I find that Powell PD may withhold the following specific identifying information permitted in *Rocker*: suspect's name, residential address, telephone numbers, workplace names, work locations, and dates of employment. *Rocker* at 14. In addition, *Rocker* allows that an office may redact other items of "specific identifying information." *Id.* To determine what other identifiers may be invoked in this case, the special master directed Powell PD to "identify any other category of record information in the withheld documents that it believes to be 'specific identifying information.'" (Sept. 13, 2018 Order at 2.) Powell PD responded that

> identifiers include the uncharged suspect's name, text message conversations identifying the uncharged suspect, the uncharged suspect's image, IP addresses, email addresses, email communications, videos, bank records, the name of the suspect's partner, residential address, telephone number, workplace name, workplace location, GPS location data, and network information.
>
> Respondent is currently unaware of any other information contained in the file which could be used to identify the uncharged suspect.

(Oct. 2, 2018 Response at 3.) From Powell PD's list, I find that the following constitute "specific identifying information": suspect's name, image (face only), email addresses, residential addresses, telephone numbers, workplace names, workplace locations, and name of suspect's partner. Although not claimed by Powell PD, I find that the following also constitute specific identifying information that may be redacted: names of suspect's children; the suspect's partner's image (face only), residential addresses, email addresses, telephone numbers, and workplace names and locations.

**{¶33}** However, I find that Powell PD's proposed general categories of "text message conversations," "IP addresses,"[14] "email communications," "bank records,"[15]

---

[14] As noted throughout Powell PD's pleadings and the affidavit of Detective Smith, IP addresses identify a *computer* for either a brief (dynamic) or extended (static) period. Powell PD offers no evidence that any IP address in the records is used as specific identifying information for an individual person.

[15] Powell PD fails to show that any bank account numbers in the records identify an individual person. *See State ex rel. Bardwell v. Rocky River Police Dept.*, 8th Dist. Cuyahoga No. 91022, 2009-Ohio-

and "network information" are not themselves specific identifying information, and may not be redacted *in toto*. The suspect's name and other specific identifying information may be redacted from within such records, with the remaining content disclosed.

{¶34} As to whether the specific identifying information of the suspect is "inextricably intertwined" in any part of the file, review *in camera* shows that many pages of the records do not contain any uncharged suspect identifier at all. E.g. Sealed Records at 0054, 0062-0063, 0065-0071, 0125-0129, 0154, etc. On the other hand, I find that the unlabeled lists of IP addresses in Sealed Records at 0319, 0323-0325 and 0331-0351 contain the IP addresses of state computers that cannot be readily distinguished from accompanying non-state IP addresses.[16] Powell alleges without contradiction that disclosure of OSU IP addresses could cause harm to computer systems of a state institution. (Response, Brief at 7-8; Response to Order at 4-5; Smith Aff. at ¶ 3, 7.) The state IP addresses are inextricably intertwined with non-state IP addresses in the records, and the complete list may therefore be redacted. As an example between these extremes, I find that the investigatory report in the Sealed Records at 0014-0041 (Response to Order at 3) contains many specific personal identifiers, but the identifiers are not inextricably intertwined with the surrounding testimony, evidence, investigators' questions and actions, and description of intra- and interagency decisions. Precise redaction of the specific identifying information from this report, and from all other documents in Sealed Records at 0001-0358, is sufficient to effect the terms of the uncharged suspect exception.

---

727, ¶ 28, 33 (agency did not justify redaction of checking account number from incident report). However, an individual's checking and savings account numbers may be redacted from an otherwise public record pursuant to R.C. 149.43(A)(1)(dd), R.C. 149.45(A)(1)(d).

[16] Although not asserted by Powell PD, R.C. 1306.23 provides a public records exception for "[r]ecords that would disclose or may lead to the disclosure of records or information that would jeopardize the state's continued use or security of any computer or telecommunications devices or services associated with electronic signatures, electronic records, or electronic transactions." I find that the evidence before the court establishes the applicability of R.C. 1306.23 to IP addresses of The Ohio State University.

**Information That Would Endanger the Life or Physical Safety of a Crime Victim or Witness**

{¶35} "Confidential law enforcement investigatory records" includes "any record * * * the release of [which] would create the high probability of disclosure of * * * [i]nformation that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source." R.C. 149.43(A)(2)(d). Powell PD asserts that "IP Addresses, sensitive network information, * * * images" and cell phone records in the file could be used to target and victimize the suspect's ex-partner, children, and other, unnamed,[17] victims and witnesses. (Response, Brief at 7-8; Response to Order at 3-5.) As to persons allegedly endangered, Powell PD clarified that its assertion of the physical safety exception

> relates specifically to Courtney Smith and the Smith children as well as other individuals which Respondent has not been able to identify but would be easily identifiable should the records become public.

(Response to Order at 3-4.) Narciso argues that Powell PD offers no factual evidence that release of records would compromise any person's physical safety, and therefore fails to meet its burden of proof. (Reply at 1.)

{¶36} Where a public office claims an exception based on risks that are not evident within the records themselves, the office must provide more than conclusory statements in affidavits to support that claim. *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 400-404, 732 N.E.2d 373 (2000). To satisfy the burden of proof for the physical safety exception, more than bare allegations are necessary to show that a record would disclose information that would endanger the life or physical safety of a particular person. *State ex rel. Nelson v. Cleveland P.D.*, 8th Dist. Cuyahoga No. 62558, 1992 Ohio App. LEXIS 4134, *5-7; *State ex rel. Jenkins v. Cleveland*, 82 Ohio App.3d 770, 785, 613

---

[17] The special master offered Powell PD the option of filing any affidavit or other evidence supporting this exception under seal to protect any information allegedly subject to the exception. (Sept. 13, 2018 Order at 2-4.)

N.E.2d 652 (8th Dist.1992). *See also Gannett GP Media, Inc. v. Ohio Dep't of Pub. Safety*, Ct. of Cl. No. 2017-00051-PQ, 2017-Ohio-4247, ¶ 16-33 (proof of threat for various exceptions). Physical safety exceptions may not be asserted beyond the person(s) demonstrably at risk, or after the risk has abated. In *State ex rel. Ohio Republican Party v. FitzGerald*, 145 Ohio St.3d 92, 2015-Ohio-5056, the county withheld as "security records" key-card-swipe data for the one employee against whom verified threats had been received, but released the same data for employees who had not received threats. *Id.* at ¶ 6-8, 24. The Court determined that when the threatened employee left his position, the key-card-swipe data were no longer security records, and ordered their release. *Id.* at ¶ 27-28, 30. In *Quolke*, 142 Ohio St.3d 509, 2015-Ohio-1083, 33 N.E.3d 30*,* the facts justifying withholding the names of replacement teachers *during* a strike had abated by the time the action was filed:

> "the board had presented little or no evidence that once the strike was over, there was any remaining threat to the replacement teachers. That decision was issued "taking into consideration the facts and circumstances as they exist[ed] * * *, several months after the strike."

*Id.* at ¶ 30. Powell PD states that its assertion of this exception

> relates specifically to Courtney Smith and the Smith children as well as other individuals which Respondent has not been able to identify but would be easily identified should the records become public.

(Response to Order at 3-4.) However, the file reveals that the relationships and proximity between the suspect, Courtney Smith, the Smith children, former coworkers, and others Powell PD describes as having "only tangential and attenuated relationship to this case" have changed. Over three years have passed since the investigations were initiated, and almost two years since the investigations concluded. (Sealed Records at 0041, 0155-0156, 0286, 0358.) Powell PD does not submit any evidence, by affidavit or otherwise, of a present threat directed to Courtney Smith and the Smith children *see contra* Sealed Records at 0286, nor does it allege that the suspect would be unable to locate them by other means. *See State ex rel. Martin v. Cleveland,* 8th Dist. Cuyahoga No. 60977, 1992

Ohio App. LEXIS 98, *23-24 (Jan. 8, 1992) (no evidence that other readily available information did not reveal where individuals were living at time records made); *Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 403, 732 N.E.2d 373 (2000) (email containing information readily ascertainable from other sources is not "trade secret"). Based on custody and visitation information in the records, I find the allegation that the suspect would be unable to locate and communicate with Courtney Smith and the Smith children without IP addresses and network information unpersuasive.

{¶37} Powell PD cites *Martin, supra,* for the proposition that "the possibility that a witness could be located using information disclosed pursuant to a public records request is by itself enough to satisfy the requirements of the exemption." The statutory language of the physical safety exception does not support a stand-alone exception for any and all "witness location information," and neither does *Martin*. The case involved Martin's request for records of his investigation for aggravated robbery and aggravated murder. The court expressed concern for "the potentially grave risks involved" and carefully examined the fourteen records for which the personal safety exception was claimed, yet found it properly supported for only six:

> Records 23, 24, 87, and 93 are the four records involved in the confidentiality exemption. They also qualify for the physical safety exemption *because the records reveal actual threats of physical violence to the concerned individuals*.
> The City claims the physical safety exemption for records 99, 101 and 103. *In his affidavit Detective Moore states that the information in those records could lead to discovery of the individual's current whereabouts. The court recognizes the substantial risk to the concerned individual.* * * *
> Similarly as to records, 21, 30, 76, 77, 82, 83 and 84, the court has doubts about how protecting the disputed information will better ensure the safety of the concerned individuals. Neither the records nor the supporting materials overcome the presumption in favor of disclosure. *The supporting affidavit is silent on why and how records 82-84 could endanger someone's physical safety.*

(Emphasis added.) *Id.* at *22-23. In the case at bar, there is no affidavit or even unsworn factual allegation of a specific physical threat or known substantial risk of physical violence. As with the records ordered released in *Martin*, Powell PD is "silent on why and how records [in the file] could endanger someone's physical safety." *Id.* I find that the bare allegation in a pleading that persons whose identities are unknown, in the absence of a known threat, might be located by IP address and network information that is nearly three years old, does not meet Powell PD's burden of proof to withhold any information on the basis of the physical safety exception.

{¶38}  Powell PD does not allege any current threat of physical violence to either Courtney Smith, the Smith children, or any other person in the file, but only that IP addresses, network information, images, and cell phone records could be used to identify, harass, and embarrass others, and jeopardize computer networks. (Response, Brief at 7-8; Response to Order at 3-5; Smith Aff. at ¶ 7.) I find that Powell PD fails to allege the elements of the physical safety exception, fails to provide affidavit or other evidence of physical threat or risk, and therefore fails to meet its burden of showing that release of any record would endanger the life or physical safety of any person.

**Fourteenth Amendment Right to Privacy**

{¶39}  Records protected under the U.S. Constitution's Fourteenth Amendment privacy right are "[r]ecords the release of which is prohibited by state or federal law," and therefore excepted from the definition of "public record" by R.C. 149.43(A)(1)(v). *State ex rel. Enquirer v. Craig*, 132 Ohio St.3d 68, 2012-Ohio-1999, ¶ 13. Powell PD asserts that unspecified photographic items "of a personal and private nature" are excepted from release because disclosure would violate the constitutional right of privacy of the individuals depicted. (Response at 9.)

{¶40} There is no general constitutional right of nondisclosure of personal information. *Lambert v. Hartman*, 517 F.3d 433, 442 (6th Cir. 2008). A Fourteenth Amendment informational privacy interest, existing or proposed, must implicate a right

that is either "fundamental" or "implicit in the concept of ordered liberty." *Id.* at 442-446. The Sixth Circuit Court of Appeals "has recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm (*Kallstrom*), and (2) where the information released was of a sexual, personal, and humiliating nature (*Bloch*)." *Id.* at 440. The Ohio Supreme Court has been similarly restrained in finding new constitutional rights to privacy, but has recognized limited additional instances, *e.g.*, *State ex rel. McCleary v. Roberts*, 88 Ohio St.3d 365, 725 N.E.2d 1144 (2000) (personal information of children); *State ex rel. Beacon Journal Publg. v. Akron*, 70 Ohio St.3d 605, 640 N.E.2d 164 (1994) (employee social security numbers).

{¶41} Powell PD provides no factual support for the proposition that disclosure of personal images in the file could result in a threat to the person's "bodily integrity," i.e., a threat of serious bodily harm or death, *Kallstrom v. Columbus*, 136 F.3d 1055, 1064, 1068 (6th Cir.1998) (*Kallstrom I*), or that any records in the file document a current "perceived likely threat," *see contra* Sealed Records at 0286. *Kallstrom v. Columbus,* 165 F.Supp.2d 686, 695 (S.D.Ohio 2001) (*Kallstrom II*). An assertion of ongoing or future risk must be supported by relevant evidence specific to that time period. "[W]ithout a clear development of the factual circumstances that would accompany any future release of personal information * * *, any finding regarding future risk to the personal safety of the officers and their families would be speculative." *Kallstrom I* at 1068. Notably, upon remand from *Kallstrom I* the federal district court found that Officer Kallstrom and her fellow plaintiffs had "failed to provide any potentially admissible evidence to suggest that the release of any information contained in the three personnel files may place any of the plaintiffs at any risk of serious bodily harm. Here, Powell PD does not provide affidavits from purportedly threatened persons, or from investigators, documenting a current perceived likely threat. Powell PD therefore fails to meet its burden of proof of risk.

{¶42} Instead of alleging risk of serious bodily harm or death, Powell PD asserts that unspecified persons are subject to "a reasonable expectation of privacy in the items and the potential for victimization resulting from the disclosure." (Response, Brief at 8.) Powell PD cites *State ex rel. Beacon Journal Publishing Co. v. Akron*, 70 Ohio St.3d 605, 612, 640 N.E.2d 164, which held only that city employees have a constitutional privacy right against unchecked release of their Social Security numbers, due to the risk of identity theft. Notably, other personal information in that case, including "[e]mployees' addresses, telephone numbers, salaries, level of education, and birth dates, among other things, were all provided" without objection from the employees. *Id.* pp. 605, 610-611. The *Quolke* Court considered *Beacon Journal v. Akron,* and threats of nonphysical harm like those that Powell PD asserts on behalf of unspecified persons, but did not find them persuasive. *Quolke,* 142 Ohio St.3d 509, 2015-Ohio-1083, 33 N.E.3d 30, at ¶ 26-27, 30. The federal Sixth Circuit has limited the scope of informational privacy rights under the Fourteenth Amendment, and determined that mere risk that information disclosure could result in identity theft or damage to credit rating does not implicate a *fundamental* constitutional interest. "[I]dentity theft constitutes a serious personal invasion, [but] it simply does not implicate the well-established right to personal security as contemplated by this court in *Kallstrom.*" *Lambert v. Hartman*, 517 F.3d 433, 444-445 (6th Cir. 2008). No Ohio case has created a general fundamental constitutional interest in the privacy of one's name. *But see State ex rel. McCleary v. Roberts*, 88 Ohio St.3d 365, 372, 725 N.E.2d 1144 (2000) (database of photographs, names, addresses and other personal information of uniquely vulnerable juvenile customers found subject to Fourteenth Amendment privacy right). Powell PD does not provide affidavits from persons purportedly at risk, or from investigators, supporting perceived likely threats of violation of any fundamental right of informational privacy. Powell PD therefore fails to meet its burden of proof of risk.

{¶43} However, I find that the second informational-privacy right established in the Sixth Circuit regarding information of a "sexual, personal, and humiliating nature," is properly invoked. In *Bloch v. Ribar*, 156 F.3d 673, 683-686 (6th Cir. 1998) the court addressed the Fourteenth Amendment right to privacy as it touched on personal sexual matters and found that the plaintiff, a rape victim, had "a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape where no penalogical [sic] purpose is being served." In *Jones v. City of Brunswick*, 704 F.Supp.2d 721 (N.D. Ohio 2010) the District Court relied on *Bloch* in denying defendants' motion for summary judgment, holding that a reasonable jury could find that a booking photograph showing the arrestee in her underwear was "sexual, personal, and humiliating." *Id.* at 742-743. In *Shaffer v. Budish*, Ct. of Cl. No. 2017-00690-PQ, 2018-Ohio-1539, this court found that images of an inmate's breasts and underwear on a video recording of her cell extraction and transport were of a sexual, personal, and humiliating nature. *Id.* at ¶ 44. On review of the photographs in this case, I find that the images of depictees' genitals, breasts, and underwear are of a sexual, personal, and humiliating nature.

{¶44} The analysis continues to the balancing of "the government's interest in disseminating the information against the [Plaintiff's] right to informational privacy," to determine whether the informational right to privacy has been violated. *Bloch* at 685. First, the courts presume that the interest served by allowing public access to public records rises to the level of a compelling state interest, *Kallstrom I*. at 1065; *State ex rel. Cincinnati Enquirer v. Streicher*, 1st Dist. Hamilton No. C-100820, 2011-Ohio-4498, ¶ 31. Narciso identifies himself as a member of the press (Complaint at 1), and Powell PD recognizes that "the suspect is already the subject of intense media reporting." (Response at 6.) As the district court concluded in releasing information regarding the *Kallstrom* officers: "The Court appreciates the need to protect the health and safety of law enforcement officials and their families. But the health and safety of this democracy depend on a press that

can function without additional burdens being imposed based on its ability to publish information concerning government activities." *Kallstrom II* at 703. Having implicated the informational privacy right in the depictees' images, and recognized the compelling governmental interest in disclosure of the record of government activities under the Public Records Act, the two must be weighed to determine whether disclosure of the images would violate the depictees' right to privacy.

{¶45} On balance, I find that the governmental, public interest in disclosure of these images does not outweigh the depictees' privacy interest implicated by disclosure to the press or the public. The police department's actions in investigating, evaluating, and reaching decisions in this matter may be substantially comprehended without these parts of the depictees' bodies being visible. *See Craig,* 132 Ohio St.3d 68, 2012-Ohio-1999, 969 N.E.2d 243, at ¶ 21; *Shaffer v. Budish*, Ct. of Cl. No. 2017-00690-PQ, 2018-Ohio-1539, ¶ 46. As information not shown to be necessary for review of the department's actions, the images primarily implicate a private interest over which the public interest does not predominate. *Bloch* at 686. This conclusion is consistent with the findings in *Jones* that the less intrusive images in that case were actionable. I conclude that Powell PD may redact images of the depictees' genitals, breasts and underwear from the photographs, but that any surrounding evidence, e.g., bruising, swelling, and cuts, must not be obscured.

### Non-Records are not Subject to the Public Records Act

"Records" are defined in R.C. 149.011(G) as including:

> any document, device, or item, regardless of physical form or characteristic, * * *, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

The definition of "record" does not include every piece of paper on which a public officer writes something, or every document received by a public office. *State ex rel. Cincinnati*

*Enquirer v. Ronan*, 127 Ohio St.3d 236, 2010-Ohio-5680, 938 N.E.2d 347, ¶ 13. R.C. 149.011(G) requires more than mere receipt and possession of an item for it to be a record for purposes of R.C. 149.43. *State ex rel. Beacon Journal Publ'g Co. v. Whitmore*, 83 Ohio St.3d 61, 64, 697 N.E.2d 640 (1998). For example, "[t]o the extent that any item contained in a personnel file is not a 'record,' *i.e.*, does not serve to document the organization, etc., of the public office, it is not a public record and need not be disclosed." *State ex rel. Fant v. Enright*, 66 Ohio St.3d 186, 188, 610 N.E.2d 997 (1993). Information that a public office happens to be storing, but which does not serve to document any aspect of the office's activities, does not meet the statutory definition of a "record." *State ex rel. McCleary v. Roberts*, 88 Ohio St. 3d 365, 367-368, 725 N.E.2d 1144 (2000) (children's personal information within files of summer pool program did nothing to document any aspect of the Recreation and Parks Department).

{¶46} A requester seeking items withheld as non-records must establish that they "create a written record of the structure, duties, general management principles, agency determinations, specific methods, processes, or other acts of the [public office]." *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 22. This is fully consistent with the purposes of the Public Records Act:

> As we noted in *McCleary*, disclosure of information about private citizens is not required when such information "'reveals little or nothing about an agency's own conduct'" and "would do nothing to further the purposes of the Act." 88 Ohio St.3d at 368 and 369, 725 N.E.2d 1144, quoting *United States Dept. of Justice v. Reporters Commt. for Freedom of the Press* (1989), 489 U.S. 749, 780, 109 S.Ct. 1468, 103 L.Ed.2d 774.

*State ex rel. Beacon Journal Publ'g Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 9-13. *Accord Dispatch* at ¶ 27. *See International Union, United Auto., Aerospace & Agric. Implement Workers v. Voinovich*, 100 Ohio App.3d 372, 376, 654 N.E.2d 139 (10th Dist.1995) (official's personal calendars and appointment books); *State ex rel. Wilson-Simmons v. Lake County Sheriff's Dep't*, 82 Ohio St.3d 37, 41, 693 N.E.2d

789 (1998) (personal email, not used to conduct business of the office); *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 25 (texts that did not document work-related matters).

{¶47} This issue has momentous practical consequences for criminal investigations, where seized computer or other storage devices may include voluminous extraneous content that are personal or business records, or are otherwise unrelated to the criminal investigation. Even items arguably related to, but not used to document any aspect of the investigation, may not qualify as "records" to which the Public Records Act applies. If all stored items were considered "records" merely by receipt and possession, the public office would be obliged to respond fully to public records requests for them, including analysis of potential exceptions for intellectual property, personal information, medical records – any of myriad public records exceptions, many of which could only be supported by the person from whom the storage device was seized. Fortunately, no such absurd result is required by the language of R.C. 149.011(G). In most penological and law enforcement circumstances when a document is received, reviewed, and integrated into a relevant file, but is not actually used to document the office's activities, it does not rise to the definition of a "record." *Whitmore* at 65. In *Whitmore*, a judge received, read, and filed letters relating to an upcoming sentencing hearing, but testified that she did not rely on them in reaching her decision. The Supreme Court found that the unsolicited letters did not serve to document the judge's sentencing decision in that case "or any other activity of her office." *Id.* at 63. *See Andes v. Ohio AG's Office*, Ct. of Cl. No. 2017-00144-PQ, 2017-Ohio-4251, ¶ 13-14 ("contents of the storage devices were either not relevant to the investigation, or were not used in the criminal prosecution"). *Compare Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 20 ("Indeed, any record that a government actor uses to document the organization, policies, functions, decisions, procedures, operations, or other activities of a public office can be classified reasonably

as a record. So can any material upon which a public office *could* rely in such determinations." (Emphasis sic.)).

{¶48} Powell PD submitted all the information it collected in connection with the investigation under seal for the court's review, regardless of its use or non-use in the investigation. (Response to Order at 7.) Powell PD alleges that many items gathered in the investigation refer to individuals who "have only tangential and attenuated relationship to this case, if any at all." (*Id.* at 4) Powell PD alleges that many of the photos stored with the case are not records documenting the activities of the office. (Response, Brief at 9.) Powel PD asserts that "any documents seized, obtained, but not reviewed by investigators are non-records and obtained incidental to the investigation." (*Id.*; Pentz Aff. at ¶ 3.) "Inherent in Ohio's Public Records Law is the public's right to monitor the conduct of government," and the very purpose of the Act is to expose governmental activity to public scrutiny. *Dispatch* at ¶ 27. Mindful of this purpose, I find under the facts and circumstances of this case that disclosure of material obtained and stored but not actually used to document the investigation, including items reviewed but disregarded by investigators, *Whitmore* at 65, would not further the purposes of the Act, "i.e., disclosure would not help to monitor the conduct of state government" and would reveal little or nothing about the agency or its activities. *Dispatch, supra*.

{¶49} If a public office raises the defense that particular items are not "records," the requester has the burden to show that those particular items meet the definition of "records." *See* Burdens of Proof, *infra*. However, Powell PD has failed for the most part to identify *particular* items as subject to the defense. After the withheld records were filed under seal, the special master directed Powell PD to address the issue of non-records:

> 6. Respondent has submitted CD-ROM disks and a flash drive as items 359-367 under seal. Respondent is directed to identify the extent to which documents and other items on each disk were seized, obtained, or reviewed by investigators, but were not actually used to document the investigation and are therefore nonrecords. Framed conversely, what, if any, items in the

storage devices were actually used to document the investigations, other than the items printed out and kept in the paper file?

**{¶50}** Respondent's response to this order shall include any necessary affidavits.

(September 13, 2018 Order.) Powell PD is in the best position to evaluate whether items obtained in the investigative reports "have concrete investigative value to the prosecution." *State ex rel. Cincinnati Enquirer v. Ohio Dep't of Pub. Safety,* 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 45, 50; *Hilliard City Sch. Dist. v. Columbus Div. of Police*, Ct. of Cl. No. 2017-00450-PQ, 2017-Ohio-8052, ¶ 21, and to identify items subject to specific exception language. *Patton v. Solon City School Dist.*, Ct of Cl. No. 2017-00570-PQ, 2017-Ohio-9415, ¶ 15. In the absence of Powell PD's identification of particular non-record material, the court is left with only the high probability that items from these devices that were printed out and included in Sealed Records at 0001-0358 are records that document the investigation, and the qualified assumption that *some* items obtained (but not created) by Powell PD and not printed out as part of Sealed Records at 0001-0358 were not items actually used to document the investigation.

**{¶51}** I find as a matter of law that to the extent unused contents of storage devices obtained in the criminal investigation were not "records" of the Powell PD, it had no obligation to produce such contents in response to Narciso's public records request. I recommend that the court order Powell PD to produce all items from the CD-ROM and flash drive that are both "records" of Powell PD and are not found by the court to be subject to any exception.

**Social Security Numbers and Statutory "Personal Information"**

**{¶52}** Social security numbers (SSNs) are subject to several public records exceptions. R.C. 149.43(A)(1)(dd) incorporates by reference R.C. 149.45(A)(1)(a), "an individual's social security number," as an exception applicable to all public records. R.C. 149.43(A)(1)(dd) further permits withholding of specified driver's license, banking,

and credit card information. SSNs are also generally subject to a constitutional privacy right. *State ex rel. Montgomery Cty. Pub. Defender v. Siroki*, 108 Ohio St.3d 207, 2006-Ohio-662, 842 N.E.2d 508, ¶ 17-18; *Beacon Journal Publ'g Co. v. Akron*, 2004-Ohio-6557 at ¶ 55. I recommend that the court permit Powell PD to redact SSNs and other statutory "personal information" from in the withheld records.

**Compliance Process**

{¶53}  Powell PD has deposited thousands of documents, images, and videos with this court, having declined to release any of the investigatory records without a court order. Powell PD concluded its response by requesting "that this Court order the specific redactions of those portions of the file containing information subject to various exceptions outlined in Ohio law." (Response, Brief at 10-11.) Under similar circumstances, the Lucas County Court of Common Pleas found:

> The evidence suggests that, rather than attempt to discharge his clear legal duty, the sheriff chose instead to transfer that duty to the court, asking it to review the record and redact it according to law. This the court is unwilling to do, and the court will not abide this effort. The court is aware that, under paragraph four of the syllabus in *State, ex rel. Natl. Broadcasting Co., v. Cleveland*, *supra*, the court is the final arbiter as to whether information is subject to public disclosure under the public records law. That function must not be invoked routinely, however, and it must not be invoked by governmental bodies to avoid discharging the duty that is placed on them to make their records available. See *State, ex rel. Natl. Broadcasting Co., v. Cleveland*, *supra* (38 Ohio St.3d), at 85, 526 N.E.2d at 792. If, after the public office reviews its record and has attempted in good faith to redact only those portions that are excepted under the law, there remains a genuine issue regarding the application of the statutory exceptions, such issues may properly be submitted to the court.
>
> It is apparent that the respondents submitted this matter to the court rather than undertake their legal obligations. It is this court's opinion that the respondents, rather than risk any criticism or complaints from witnesses, deputies, or the union in making required disclosures, have "passed the buck" to this court. Having done so, they must accept the consequences of the risk taken. Such premature litigation cannot be permitted. Wholesale redaction, or refusal to produce public records without a court order, as was

done in this case, creates an impermissible burden on the courts, which are already overburdened with equally or more important matters that must be disposed of within time limits that are creating a strain on the judicial system in its efforts to meet those obligations for the protection of society.

*State ex rel. Toledo Blade Co. v. Telb*, 50 Ohio Misc.2d 1, *10-12, 552 N.E.2d 243, 251-252 (C.P.1990).

{¶54} Powell PD had ample opportunity to undertake its statutory obligations prior to litigation, and again with the assistance of court mediation. Despite direct orders to do so, Powell PD did not provide the court with the identity, location, status, justification, actual use, and risk information necessary to determine particular application of claimed exceptions. (August 22, 2018 Order;[18] September 13, 2018 Order.[19]) Powell PD's only specific explanation as to how virtually all the file is "inextricably intertwined" with uncharged suspect identifiers was "due to nature of request." (Response, Brief at 5-6, 12-13; Response to Order at 3.) Powell PD did not undertake to redact only those materials

---

[18] 2. As part of its response, include argument and/or affidavits that provide the following information for each withheld document:

   a. Identify by page, paragraph, line, and word or image, as appropriate, each specific portion of the document the release of which would create a high probability of disclosure of the identity of a suspect who has not been charged with the offense to which the record pertains. Explain how each portion so identified creates the high probability of disclosure of identity.

   b. Identify by page, paragraph, line, and word or image, as appropriate, the specific additional portion of any document that respondent claims is inextricably intertwined with a corresponding item identified in a. above. Explain how each additional portion so identified meets the standard of being "inextricably intertwined."

   c. For any additional claimed exception, provide argument and affidavits as necessary to identify and explain the specific portion(s) of any document that fall squarely within the exception.

[19] 3. Respondent asserts the exception in R.C. 149.43(A)(2)(d) for record information that would create a high probability of disclosure of information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source. For each person who respondent asserts would be endangered by disclosure, respondent is directed to provide the factual evidence and rationale on which it relies to conclude that disclosure of particularly identified information would endanger the person at present or in the future.

   6. Respondent has submitted CD-ROM disks and a flash drive as items 359-367 under seal. Respondent is directed to identify the extent to which documents and other items on each disk were seized, obtained, or reviewed by investigators, but were not actually used to document the investigation and are therefore non-records. Framed conversely, what, if any, items in the storage devices were actually used to document the investigations, other than the items printed out and kept in the paper file?

explicitly excepted from disclosure, but instead withheld all of the records, many of which could not conceivably be construed to be excepted from disclosure. *See Telb* at *5.

{¶55} The court's ability to order disclosure, redaction, or withholding of specific records and portions of records is thus severely constrained. Accordingly,

> The court will not undertake to perform the redactions ordered. It is the responsibility of respondent to release any additional records, properly redacted, in conformity with the findings and order issued by the court.

*Ohio Crime Victim Justice Ctr. v. Cleveland Police Div.*, Ct. of Cl. 2016-00872-PQ, 2017-Ohio-8950, ¶ 45. I recommend that the court order that Powell PD may redact words, numbers, images or other items that fall squarely within the following exceptions, as detailed in the report:

1. R.C. 149.43(A)(2)(a) – specific identifying information of uncharged suspect.

2. R.C. 149.43(A)(1)(dd) – personal information listed in R.C. 149.45(A)(1).

3. R.C. 1306.23 – information that would jeopardize the state's continued security of any computer.

4. Fourteenth Amendment right to privacy to images within photos, and SSNs.

5. Although not an exception, non-records may be withheld.

{¶56} I further recommend the following as to the items submitted to the court on electronic media, and as to compliance in general:

A.    <u>Video and Audio Recordings</u>

{¶57} Video and audio recordings are subject to the same statutory exception language, and to the same case law standards limiting the extent of redaction, as text records. *See Patton v. Solon City School Dist.*, Ct of Cl. No. 2017-00570-PQ, 2017-Ohio-9415, ¶ 7-15; *Shaffer v. Budish*, Ct. of Cl. No. 2017-00690-PQ, 2018-Ohio-1539, ¶ 46, 53. I recommend that the video and audio recordings filed under seal be disposed of as follows:

{¶58} DVD 359: The two videos on this disc are referenced in the investigation file. Images of the faces of the suspect, partner, and children are specific identifying information of an uncharged suspect, and may be redacted. Any spoken name or other specific identifying information may be redacted from the audio.

{¶59} DVD 360: This four-part video is body-worn camera footage of Officer Boruchowitz's October 26, 2018 interview of the suspect's partner, alternating with the officer's separate communications with other Powell PD officers and other government personnel. During the interview portions, only the suspect's partner and the officer's arms and hands are visible. Redacting the victim's face as specific identifying information of an uncharged suspect leaves no remaining visual information that documents the investigation, and therefore all video images during the interview portions may be withheld as inextricably intertwined. The voice of the suspect's partner is not specific identifying information of the uncharged suspect, but any specific identifying information spoken during the interview may be redacted.[20] The video images when the officer is not in the interview room are not subject to any comprehensive exemption, but specific identifying information spoken in the audio may be redacted.

{¶60} Although the video is time-stamped "2015-10-26," it is neither referenced in nor attached to the initial incident report. Further, while much of the footage records receipt of factual information from the suspect's partner it also includes investigation inquiries, investigation next steps, and intra- and interagency communication. In *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety,* 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 5-15, 45-50, a highway patrol dash-cam recording made during a vehicle chase and ensuing arrest included audio and video of the officer's communication with other patrol personnel, investigation inquiries, and factual information from the

---

[20] Even were a distinctive voice found to be "specific identifying information," a text transcript of the interview, if available "as an integral part of the normal operations of" Powell PD, R.C. 149.43(B)(6), would not be "inextricably intertwined" with the identifying voice. Another technological solution would be an audio copy disidentified using voice modification software.

suspect. The recording was made prior to creation of the incident report, and was not attached to the incident report. The Court found that only the 90-second portion of the recording when the officer Mirandized and questioned the suspect was "investigatory" work product. Evaluating the facts under the case-by-case review required by the Supreme Court, *Id.* at ¶ 45, 50, I find that the witness interview portion of DVD 360 is investigatory in nature and not part of the initial incident report. As part of the "investigation" it is thus subject to the CLEIRs uncharged suspect exception. However, I find that the portions other than the witness interview, like the non-investigatory work product portions of the recording in *Enquirer v. DPS*, hold little or no investigative value and should be disclosed. *Id.* at ¶ 45-47, 49.

{¶61} DVD 361: The two audio recordings of witness interviews on this disc, conducted by Detective Pentz on November 3, 2015, are not subject to any comprehensive exception, nor are the contents inextricably intertwined with specific identifying information of the suspect. They are records of the investigation, subject only to redaction of specific identifying information of the suspect.

{¶62} DVD 362, 363, and 364, and flash drive 363-364: The Cellebrite Reports on these discs and flash drive contain and index the contents of various electronic devices. Items on these discs and the flash drive are records of the investigation only to the extent they were actually used by Powell PD. Non-record portions may be withheld.

{¶63} DVD 365: The emails and information regarding emails on this disc are records of the investigation only to the extent they were actually used. However, emails that include officers of the Powell PD as correspondents are implicitly records of the investigation, subject only to redaction of specific identifying information of the suspect.

{¶64} DVD 366: The text, image and report files on this disc constitute the contents of an electronic device obtained in the investigation. Items within it are records of the investigation only to the extent they were actually used.

{¶65} Any exempt name or other specific identifying information that occurs in otherwise non-exempt video or audio records may be redacted. As with information redacted from a text record, Powell PD must advise Narciso of each portion of any video or audio record that it withholds. R.C. 149.43(B)(1) ("When making that public record available * * *, the public office * * * shall notify the requester of any redaction or make the redaction plainly visible.") Since every redaction is considered a partial denial of the request, *Id.*, Powell PD shall also "provide the requester with an explanation, including legal authority, setting forth why the request was denied." R.C. 149.43(B)(3).

B.      Generally

{¶66} The report specifies the records that are part of the initial incident reports and thus not subject to redaction of uncharged suspect identifiers.

{¶67} For the specific identifiers and images found subject to the uncharged suspect and constitutional privacy exemptions, and items that are non-records, the court will not endeavor within the short timelines provided in R.C. 2743.75 to detail by page, line, word and image the redactions permitted in the hundreds of pages where they likely apply. I find that the "specific identifying information" recognized as applicable may[21] be surgically redacted from the vast majority of the withheld documents without leaving records that would "create a *high probability* of disclosure" of the identity of the suspect. R.C. 149.43(A)(2).

{¶68} This report identifies two only instances where exempt information is inextricably intertwined with non-exempt information – Sealed Records at 0319, 0323-0325 and 0331-0351, and the interview portions of DVD 360. I find that no other non-exempt records in the file may be withheld as "inextricably intertwined" with other, exempt

---

[21] The wording of R.C. 149.43(A)(1), "'Public record' does not mean any of the following: (h) Confidential law enforcement investigatory records," establishes only a *discretionary* exception to the Public Records Act, and does not *prohibit* release of CLEIRs records. 2000 Ohio Op.Atty.Gen. No. 021 ("R.C. 149.43 does not expressly prohibit the disclosure of items that are excluded from the definition of public records, but merely provides that their disclosure is not mandated.")

information. This finding is supported by the failure of Powell PD to meet its burden of proof to justify how and why any other particularly identified non-exempt record is inextricably intertwined with exempt information. While the voluminous contents of DVDs 362-366 and flash drive 363-364 might include exempt information that is inextricably intertwined with non-exempt information, the exercise of this assertion should be largely preempted by the non-record nature of contents that were not used to document the investigation. It is not necessary to review items that are non-records to determine whether they contain excepted information.

**{¶69}** The court must rely on Powell PD's diligent compliance to redact information only as directed in the court's final decision and entry. However, the court must also anticipate the potential for disputes regarding compliance. I recommend that Powell PD be ordered to provide the required investigatory records retaining the pagination used in the sealed records (0001-0358) for Narciso's use in any challenge.

**{¶70}** The special master recommends that the parties cooperate to reach a mutually satisfactory production of records in this case, with the goal of producing the required public records while minimizing the burden on the public office. Cooperation in public records compliance is favored by the courts. *See State ex rel. Morgan v. Strickland,* 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 15-20. The parties are further encouraged to fully utilize the tools provided by R.C. 149.43(B)(2) through (7) in negotiating future requests. During the initial response to a request, a public office may take the time reasonably necessary to analyze and redact records. *State ex rel. Shaughnessy v. Cleveland*, 149 Ohio St.3d 612, 2016-Ohio-8447, 76 N.E.3d 1171, ¶ 8-22; *State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 10, 16-17. For large or complex requests this can involve a rolling release of records, beginning with those clearly non-exempt and continuing with subsequent releases as records requiring legal advice and/or redaction are processed. The parties

are encouraged to resolve the application of statutory exceptions in good faith before resorting to litigation. *Telb,* 50 Ohio Misc.2d 1, 552 N.E.2d 243, at *11.

**Conclusion**

{¶71} Upon consideration of the pleadings, attachments, and responsive records filed under seal, I recommend that the court issue an order granting the claim for production of records as detailed above. I recommend that the court find that respondent may redact exempt items from its records only as expressly provided in this report. It is the responsibility of respondent to release any additional records, properly redacted, in conformity with the findings and order issued by the court. *Telb*, 50 Ohio Misc.2d 1, *11-12, 552 N.E.2d 243, 251 (C.P.1990). I recommend the court order that requester is entitled to recover from respondent the costs associated with this action, including the twenty-five-dollar filing fee. R.C. 2743.75(F)(3)(b).

{¶72} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

 

 

_____
JEFFERY W. CLARK
Special Master

Filed October 22, 2018
Sent to S.C. Reporter 11/14/18